HIGGINS LAKE PROPERTY OWNERS ASSOCIATION v
GERRISH TOWNSHIP
BRANCH v GERRISH TOWNSHIP

Docket Nos. 225419, 225420, 225722, 228357, 228602, 229581, 229606, 231089, 231181, 234810, 234874, 234968. Submitted August 6, 2002, at Grand Rapids. Decided January 17, 2003, at 9:00 A.M. Leave to appeal sought.

The Higgins Lake Property Owners Association, Richard G. and Jacqueline A. Branch, Robert W. and Donna J. Sanborn, and others brought actions in the Roscommon Circuit Court against Gerrish Township and others, seeking declaratory and injunctive relief regarding the public's right to use the ends of roads that terminate at the edge of Higgins Lake in several subdivisions around the lake. Owners of back lots in the subdivisions and members of the general public have used the road ends for lounging, sunbathing, picnicking, and mooring and hoisting boats. The plaintiffs contended that these activities were beyond the scope of each plat dedication and sought to enjoin further use of the road ends for these purposes. Plaintiffs Richard and Jacqueline Branch and Robert and Donna Sanborn also requested that the court vacate a portion of Montrose Avenue in the Old Point Comfort subdivision and give them title thereto on the ground that it was not public property because no effective dedication of the land had occurred. The court, Michael J. Baumgartner, J., granted summary disposition for, and an injunction to, the plaintiffs in the case that involved the Old Point Comfort subdivision, and denied the request by the Branches and the Sanborns regarding the end of Montrose Avenue. In the case that involved the Highland Park subdivision, the court, Ronald M. Bergeron, J., after a bench trial, decided in favor of the defendants and dismissed the plaintiffs' complaint. In the remaining cases that involved the Triangle Park, Lyon Manor, Shoppenagon's Lodge, Honolulu Beach, Sovereign Park, Whittington Park, Evergreen Park, and Almeda Beach subdivisions, the court, Ronald M. Bergeron, J., after a bench trial, granted the plaintiffs' request for declaratory relief but not their request for injunctive relief. Some of the parties appealed or cross appealed, and the appeals were consolidated.

The Court of Appeals *held*:

1. The trial court properly denied the defendants' motions to dismiss the claims of the Higgins Lake Property Owners Association (HLPOA) for lack of standing. In previous consolidated appeals that involved the Old Point Comfort, Triangle Park, Highland Park, and Almeda Beach subdivisions, the Court of Appeals, in an unpublished opinion per curiam, issued April 8, 1997 (Docket No. 190782), held that the HLPOA had standing to sue as a nonprofit membership organization litigating to vindicate the interests of its members. That holding is binding as law of the case to the present appeals involving those subdivisions. The HLPOA has standing in the cases involving the other subdivisions for the same reason the Court of Appeals stated in its unpublished opinion.

2. Publicly dedicated streets that terminate at the edge of navigable waters are generally deemed to provide public access to the water. The members of the public who are entitled to access to navigate waters have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. The right of a municipality to build a wharf or dock at the end of a street terminating at the edge of navigable waters is based on the presumption that the platter intended to give access to the water and permit the building of structures to aid in that access. The extent to which the right of public access includes the right to erect a dock or boat hoists or the right to sunbathe and lounge at the road end depends on the scope of the dedication. The intent of the dedicator is to be determined from the language used in the dedication and surrounding circumstances. Applying these principles here to Higgins Lake through the road ends have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming, that lounging, sunbathing, picnicking, and the erection of boat hoists at the road ends are prohibited as beyond the scope of the dedications, that one, nonexclusive dock may be erected at each road end to facilitate public access to the water, that members of the public are entitled to moor boats temporarily as an incident of the public's right of navigation, and that private docks at road ends are not permitted.

3. The trial court did not err in granting summary disposition for the plaintiffs in the cases that involved the Old Point Comfort subdivision. In the case that involved the Highland Park subdivision, the trial court clearly erred in finding that the scope of the dedication includes the shore activities of sunbathing, picnicking, and lounging, as well as the mooring of boats other than on a temporary basis, and placing boat hoists at the road ends. The trial court's findings in the cases that involved the Triangle Park, Shop-

penagon's Lodge, Honolulu Beach, Sovereign Park, Whittington Park, and Almeda Beach subdivisions were not clearly erroneous.

4. The trial court abused its discretion in granting injunctive relief in the cases that involved the Old Point Comfort subdivision, but did not abuse its discretion in denying injunctive relief in the other cases. Injunctive relief was not warranted in view of a lack of a showing of irreparable harm to the plaintiffs, the practicability of framing and enforcing injunctive orders, and the relative adequacy to the plaintiffs of injunctions.

5. The trial court properly denied the request by plaintiffs Branch and Sanborn that a portion of Montrose Avenue in the Old Point Comfort subdivision be vacated. The trial court did not clearly err in finding that there was in the recorded plat a clear offer to dedicate land now known as Montrose Avenue for public use. Pursuant to MCL 560.255b, ten years after a plat is first recorded, land dedicated to the use of the public in the plat is presumed to have been accepted on behalf of the public by the municipality within whose boundaries the land lies. The Branches and the Sanborns, who had the burden of rebutting the presumption of acceptance with evidence of a withdrawal of the dedication, did not rebut the presumption of public acceptance.

6. The trial court did not clearly err in finding that the defendants-appellants in the case that involved the Almeda Beach subdivision did not acquire a public easement by prescription by their use of the road end in question. Mere use is insufficient to establish a public easement by prescription.

Affirmed in part and reversed in part.

1. PARTIES — STANDING.

The concept of standing represents a party's interest in the outcome of litigation that ensures sincere and vigorous advocacy; a party must demonstrate more than just a commitment to vigorous advocacy, it must show that it has a substantial interest that will be detrimentally affected in a manner distinct from that of the citizenry at large, i.e., the party must demonstrate an actual injury or likely chance of immediate injury that is different from that of the general public.

2. NAVIGABLE WATERS — PUBLIC STREETS — PUBLIC ACCESS.

Streets dedicated to the public that terminate at the edge of navigable waters generally are deemed to provide public access to the water; the members of the public who are entitled to access to navigable waters have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming; an incident of the public's right of navigation is the right to anchor boats temporarily.

3. NAVIGABLE WATERS — PUBLIC STREETS — DOCKS — PLATS — DEDICATION.

The right of a municipality to build a wharf or dock at the end of a public street terminating at the edge of navigable waters is based upon the presumption that the platter intended to give access to the water and permit the building of structures to aid in that access; the extent to which the right of public access includes the right to erect a dock or boat hoists or the right to sunbathe and lounge at the end of the street depends on the scope of the dedication; the intent of the dedicator is to be determined from the language used in the dedication and the surrounding circumstances.

4. INJUNCTIONS — APPEAL.

Injunctive relief is an extraordinary remedy that courts normally grant only when justice requires it, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury; a decision by a trial court to grant or deny an injunction is reviewed on appeal for abuse of discretion.

5. DEDICATION — STREETS — REQUIRED ELEMENTS.

A valid dedication of land for a public purpose requires a recorded plat clearly offering the land for public use, and a subsequent acceptance of the offer by a public authority; the acceptance must be timely, and it must be accompanied by a public act either formally confirming or accepting the offer of dedication, and ordering the opening of such street, or by exercising authority over it, in some of the ordinary ways of improvement or regulation.

6. EASEMENTS — PRESCRIPTION.

An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years (MCL 600.5801[4]).

7. EASEMENTS — PUBLIC EASEMENTS — PRESCRIPTION — PUBLIC RECREATIONAL RIGHTS.

The establishment of a public recreational right by prescription requires, at a minimum, governmental action to facilitate and control recreational use; recreational use alone by various individuals over a period of years is insufficient to establish a public easement.

*Carey & Jaskowski, PLLC* (by *William L. Carey* and *Kathleen Kaufman*), for Higgins Lake Property Owners Association and others.

*Hess & Hess, PC* (by *Scott L. Hess*), for Gerrish Township.

*Deamud & Bennett* (by *James R. Deamud*) for Roscommon County Road Commission.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *A. Michael Leffler* and *James E. Riley*, Assistant Attorneys General, for Department of Natural Resources.

*Cox, Hodgman & Giarmarco, P.C.* (by *William H. Horton* and *Michael R. Turco*), for Robert C. Sugden and others.

*Brabant & Mannikko, PLLC* (by *Bruce K. Mannikko*), for Barbara J. Bently and others.

*Reeves & Jones, P.C.* (by *Timothy D. Reeves*), for Timothy D. Reeves.

Before: WHITBECK, C.J., and BANDSTRA and TALBOT, JJ.

TALBOT, J. In these consolidated appeals, plaintiffs sought declaratory and injunctive relief regarding property rights at the ends of roads that terminate at the edge of Higgins Lake. In Docket Nos. 225419 and 225420 (Old Point Comfort subdivision), the trial court granted summary disposition in favor of plaintiffs and granted an injunction. The trial court denied certain individual plaintiffs' request to vacate Montrose Avenue in Old Point Comfort subdivision. We affirm in part and reverse in part. In Docket No. 225722 (Highland Park subdivision), after a bench trial, the court found in favor of defendants. We affirm in part and reverse in part. In the remaining cases, Docket Nos. 228357 (Triangle Park subdivision), 228602 (Lyon Manor and Shoppenagon's Lodge subdivisions), 229581 (Honolulu Beach subdivision), 229606 (Sovereign Park subdivision), 231089 and

231181 (Whittington Park subdivision), 234810 (Evergreen Park subdivision), and 234874 and 234968 (Almeda Beach subdivision), following a bench trial, the court granted plaintiffs' request for declaratory relief and denied injunctive relief. We affirm.

## I. BACKGROUND

The subject of these cases is the scope of the public's right to use the ends of roads that terminate at the edge of Higgins Lake (road ends) in several subdivisions around the lake. Plaintiff Higgins Lake Property Owners Association (HLPOA) is composed of owners of lakefront property on Higgins Lake. The HLPOA and individual plaintiffs brought these actions seeking declaratory judgments regarding the permissible uses of these road ends as controlled by the subdivision plats that dedicated the streets and alleys "to the use of the public." Owners of back lots in the subdivisions, as well as members of the general public, have used the road ends for lounging, sunbathing, and picnicking, and have also moored boats and placed boat hoists at the road ends. Plaintiffs argued that these activities were beyond the scope of each plat dedication and sought to enjoin further use of the road ends for these purposes.

The controlling authority is *Jacobs v Lyon Twp*, 181 Mich App 386, 387-388; 448 NW2d 861 (1989), vacated 434 Mich 922 (1990), *(After Remand)*, 199 Mich App 667; 502 NW2d 382 (1993), in which this Court addressed the same issue and held that the intent of the grantor controls the scope of the dedication. In reliance on *Jacobs*, which involved identical dedication language, plaintiffs maintained that lounging, sunbathing, picnicking, and seasonal boat mooring

exceed the scope of the subdivision plat dedications. Defendants presented evidence of the traditional and historical uses of the road ends, which uses included sunbathing, picnicking, lounging, and boat mooring for many years. The pertinent language of the plat dedications is identical in all these cases, and the evidence offered below differed only slightly among the cases. The differences concerned such factors as the ratio of front lots to back lots in a particular subdivision, the dimensions of the road ends, and the level and type of activity occurring at the various road ends.

### II. HLPOA STANDING

DOCKET NOS. 225419 AND 225420 (OLD POINT COMFORT), 225722 (HIGHLAND PARK), 228357 (TRIANGLE PARK), 228602 (LYON MANOR AND SHOPPENAGON'S LODGE), 229581 (HONOLULU BEACH), 229606 (SOVEREIGN PARK), 231181 (WHITTINGTON PARK), AND 234968 (ALMEDA BEACH)

In these cases, defendants-appellants argue that the HLPOA lacks standing to bring these actions requesting interpretations of these subdivision plats. They argue that the HLPOA has no legal interest in the interpretations of the subdivision plats, and that its interest in the outcome of these cases is no different than that of the general public. We disagree.

The question whether a party has standing is a question of law that this Court reviews de novo. *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 734-736; 629 NW2d 900 (2001).

> As our Supreme Court has explained, "[t]he concept of standing represents a party's interest in the outcome of litigation that ensures sincere and vigorous advocacy." *House Speaker v Governor*, 443 Mich 560, 572; 506 NW2d 190

(1993). A party must demonstrate more than just a commitment to vigorous advocacy, it must show that it has a substantial interest that will be detrimentally affected in a manner distinct from that of the citizenry at large. *Id.* That is, the plaintiff must demonstrate an actual injury or likely chance of immediate injury that is different from that of the general public. *Kuhn* [*v Secretary of State*, 228 Mich App 319, 333; 579 NW2d 101 (1998)]. The plaintiff's suit is generally precluded if its interests are no different than those of the public. *Id.* [*Franklin Historic Dist Study Committee v Village of Franklin*, 241 Mich App 184, 187-188; 614 NW2d 703 (2000).]

See also *Lee, supra* at 734-736. "A nonprofit corporation has standing to advocate interests of its members where the members themselves have a sufficient stake or have sufficiently adverse and real interests in the matter being litigated." *Trout Unlimited, Muskegon-White River Chapter v White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992), citing *Karrip v Cannon Twp*, 115 Mich App 726, 733; 321 NW2d 690 (1982).

This Court has previously addressed the standing of the HLPOA in the consolidated appeals of the cases involving Old Point Comfort, Triangle Park, Highland Park, and Almeda Beach subdivisions. This Court held that the HLPOA "had standing to sue as a nonprofit membership organization litigating to vindicate the interest of its members." *Higgins Lake Property Owners Ass'n v Lyon Twp*, unpublished opinion per curiam of the Court of Appeals, issued April 8, 1997 (Docket No. 190782). This decision is the law of the case for the appeals involving Old Point Comfort, Triangle Park, Highland Park, and Almeda Beach subdivisions.

> The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. [*Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001) (citations omitted).]

See also *Ewing v Detroit*, 252 Mich App 149, 161; 651 NW2d 780 (2002).[1] Accordingly, we are bound by this Court's previous determination to recognize the standing of the HLPOA in these cases.

Further, we conclude that the same reasoning applies to the other cases at bar in which the standing of the HLPOA is challenged. The HLPOA is a nonprofit corporation whose members are primarily lakefront property owners. The purpose of the HLPOA is to protect the lake, the watershed, and the interests of its members. The HLPOA asserts that the alleged overuse of, and concentration of persons and watercraft, at the road ends is affecting its members' enjoyment of the lake as well as their property values. Accordingly, the HLPOA has standing to sue as a nonprofit membership organization litigating to vindicate the interest of its members. We conclude that the trial court properly denied defendants' motions to dismiss for lack of standing.

---

[1] We note that this Court has previously addressed the issue of standing in the case involving Evergreen Park subdivision, and held that the HLPOA had standing. *Higgins Lake Property Owners Ass'n v Lyon Twp*, unpublished opinion per curiam of the Court of Appeals, issued May 30, 2000 (Docket No. 219768).

### III. SCOPE OF PLAT DEDICATIONS

DOCKET NOS. 225419 AND 225420 (OLD POINT COMFORT), 225722 (HIGHLAND PARK), 228357 (TRIANGLE PARK), 228602 (LYON MANOR AND SHOPPENAGON'S LODGE), 229581 (HONOLULU BEACH), 229606 (SOVEREIGN PARK), 231089 AND 231181 (WHITTINGTON PARK), 234968 (ALMEDA BEACH)

The HLPOA and individual plaintiffs argue that the scope of the plat dedications of these subdivisions do not allow use of the road ends for seasonal boat mooring or recreational activities such as lounging, sunbathing, and picnicking. They argue that the subdivision plat dedications of the roads were intended to provide only access to the lake. Defendants argue that the historical and traditional uses of the road ends evidence the dedicators' intent to permit sunbathing, picnicking, lounging, boat mooring, and boast hoists at the road ends.

### A. STANDARD OF REVIEW

We review a trial court's findings for clear error. *Christiansen v Gerrish Twp,* 239 Mich App 380, 387; 608 NW2d 83 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *Id.*

### B. CASE LAW PRECEDING *JACOBS*

The Plat Act, 1887 PA 309,[2] governed the dedications of the subdivisions at issue in these cases. Michigan appellate courts have interpreted the statute, as

---

[2] The Plat Act provided in part:

well as case law, as it pertains to land dedicated for public use, in several cases that are instructive to the cases at bar.

In *McCardel v Smolen*, 404 Mich 89; 273 NW2d 3 (1978), the plaintiffs, front lot owners in a Higgins Lake subdivision, sought to enjoin the defendants, certain back lot owners, from using the beach and the water at a particular location. The land at issue was a strip of land parallel to the shore and designated in the subdivision plat as Michigan Central Park Boulevard. As in the instant cases, the subdivision plat in *McCardel* dedicated the streets and alleys "to the use of the public." The plaintiffs contended that the dedication granted the public only the right to use the boulevard for street purposes, and the defendants argued that the dedication conferred riparian rights to the public to "use the beach and water for lounging, swimming and boating purposes." *Id.* at 93. This Court held that "lounging, picnicking and access to and from the water were within the scope of the dedication." *Id.* at 102.

The Supreme Court concluded that this Court "should not have reached the question whether the boulevard was dedicated not only for pedestrian and vehicular uses but additionally for park or beach uses such as lounging, picnicking and access to and from

The maps so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included in trust to and for the uses and purposes therein designated, and for no other use or purposes whatever. [1887 PA 309.]

the water for swimming and boating" because the issue had not been addressed in the circuit court. *Id.* at 102. The Court remanded the case to the circuit court to address the scope of the dedication. The Supreme Court discussed such shore activities, and also the public rights attendant to roads terminating at the lake:

> There remain the questions whether the public i) may lounge and picnic on the boulevard and ii) has a right, via the boulevard, of access to and from the water for swimming and boating.
>
> Lounging and picnicking on this wide boulevard, activities which need not involve use of the water, are not riparian or littoral rights. We agree with the Court of Appeals that "[t]hose activities are in no way directly related to a true riparian use of the waters of Higgins Lake; even assuming that the defendants choose to lounge and picnic on the boulevard because of the lake's proximity. In that context, the only 'use' of the water is the enjoyment of its scenic presence."
>
> Just as clearly, access to and from the water is a riparian or littoral right. Assuming, *arguendo*, that the plaintiffs own the riparian or littoral rights as an incident of front lot ownership, it does not follow necessarily that the public does not have the right to enter and leave the water from the boulevard. The question to which the parties have devoted most of their attention in this litigation (ownership of the riparian or littoral rights) is, again, not dispositive. The question whether the public has the right to enter and leave the water from the boulevard, like the question whether they may lounge and picnic on the boulevard, depends, rather, on the scope of the dedication. [*Id.* at 96-97.]

The Court had long ago recognized in *Backus v Detroit*, 49 Mich 110; 13 NW 380 (1882), that where a public highway ends at a navigable body of water, public access to the body of water is provided.

In 1985, the Supreme Court decided *Thies v Howland*, 424 Mich 282; 380 NW2d 463 (1985). That case involved a dispute between residents of a subdivision on Gun Lake. The plaintiffs were front lot owners and the defendants were back lot owners. At issue were the defendants' rights in a walkway parallel to the shore for purposes of constructing a dock and mooring their boats from the walkway, as well as the defendants' rights in an alley that ran perpendicular to the lakefront. The Court stated:

> Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore. Nonriparian owners and members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. [*Id.* at 288 (citations omitted).]

The Court recognized that "[c]ases involving a way which terminates at the edge of a navigable body of water are treated differently from those involving a way which runs parallel to the shore." *Id.* at 295. With respect to the rights attendant to the alley that terminated at the water, the Court stated:

> Public ways which terminate at the edge of navigable waters are generally deemed to provide public access to the water. A city, on behalf of its citizens, is entitled to build wharves at the end of such streets to aid the public's access. The right to build a wharf or dock does not depend on whether the public owns the fee in the way. Rather, it is based upon the presumption that the plattor intended to give access to the water and permit the building of structures to aid in that access. Any dock which is constructed

at the end of a common way must be made available for the
use of those to whom the way is dedicated. [*Id.* at 295-296
(citations omitted).]

On the basis of these authorities, the scope of a
dedication of land to public use in a subdivision plat
depends on the intent of the dedicator, and public
ways that terminate at the water are presumed to
have been intended to provide access to the water.
This Court reaffirmed this principle in *Jacobs, supra,*
and applied it in the context of the issues raised in
the cases at bar.

### C. THE *JACOBS* CASE

In *Jacobs, supra,* this Court addressed the scope of
a subdivision plat dedication of streets and alleys to
the public as it concerned permissible uses of road
ends at Higgins Lake. *Jacobs, supra,* 181 Mich
App 388. The plaintiffs owned property in Lyon
Manor subdivision that fronted Higgins Lake and was
adjacent to road ends. *Id.* The plaintiffs brought the
action to challenge a Lyon Township ordinance that
purported to regulate the use of the road ends. The
plaintiffs alleged that the ordinance "permitted and
encouraged public activities that exceeded the scope
of the statutory dedication of the streets, and that the
township, through enactment of the ordinance, had
intentionally created a nuisance." *Id.* This Court
explained:

[T]he ordinance provides for the erection of no more
than one nonexclusive private dock at each road-end which
must be maintained for public use, prohibits overnight
mooring, prohibits permanent mooring posts, permits the
erection of boat hoists, prohibits parking on the roadway,

and prohibits the dry storage of boats, boat hoists, docks, et cetera on the land at the road-end. The ordinance provides that, except as otherwise prohibited, the general public may use the road-ends for "lounging, picnicking, swimming, fishing and boating, provided such activities do not create a safety hazard, cause unreasonable congestion, interfere with the intended use, or otherwise disturb the peace." [*Jacobs, supra*, 181 Mich App 388-389.]

The plaintiffs presented evidence of public use of the road ends for lounging, sunbathing, picnicking, and mooring of boats, which resulted in noise, debris, and other interferences with the plaintiffs' quiet enjoyment of their properties.[3] *Id.* at 388. After a bench trial, the trial court ruled in favor of the defendants and "held that Ordinance 31 did not grant the public more riparian rights than are generally recognized as access rights." *Id.* at 389.

This Court disagreed, and held that a municipality's right to construct dockage "depends upon the scope of the dedication, which in the case of a dedicated street terminating at the edge of navigable waters is presumed to include an intention to give *access* to the water and permit the building of structures to aid in

---

[3] The *Jacobs* Court elaborated on the extent of the use of the road ends:

The several docks which had existed prior to the enactment of Ordinance 31 were subsequently replaced by a single dock at each road-end. Several boat hoists have been built adjacent to each of these docks and testimony indicated that up to seven or eight boats per dock are regularly stored in the boat hoists, apparently on a seasonal basis. Plaintiffs testified that boats have been chained to the shore or permanently anchored, sometimes for several weeks, adjacent to the road-end docks and that members of the public have used the docked [sic] and anchored boats at the dock for overnight camping, late-night partying, all-day sunbathing, sports, lounging and picnicking. [*Jacobs, supra*, 181 Mich App 389.]

that *access.*" *Id.* at 390 (emphasis in original). This Court concluded that the construction of a public dock and the use of the surface waters for swimming, wading, fishing, boating, and to temporarily anchor boats were within the scope of the dedication and therefore were permissible. *Id.* With respect to shore activities, this Court concluded that "the construction of boat hoists, seasonal boat storage and the use of road-ends for lounging and picnicking exceed the scope and intent of the dedication of property for use as streets." *Id.* at 391.

The plaintiffs sought leave to appeal to the Supreme Court. In lieu of granting leave, the Court vacated the judgments of this Court and the trial court. *Jacobs, supra,* 434 Mich 922. The Supreme Court remanded the case to the trial court for an evidentiary hearing to determine whether each of the disputed activities was within the scope of the dedication.[4] On remand, the trial court found that "the scope of the dedication permitted (1) the installation of one nonexclusive dock at the end of each of the roads leading to the lake, (2) the use of boat hoists in the water at the end of those roads, and (3) the use of those roads as designated in § 7 of the ordinance." *Jacobs (After Remand), supra,* 199 Mich App 670. The court also determined that "shore activities" were within the scope of the dedication. *Id.*

---

[4] Before the case was remanded, the township amended its ordinance. As amended, the ordinance neither expressly permitted nor expressly prohibited the use of the road ends for lounging, picnicking, or sunbathing. Section 7 of the ordinance provided that "the general public may utilize any lateral road end and/or right-of-way as extended into Higgins Lake for swimming, fishing, boating, and uses incidental thereto." *Jacobs (After Remand), supra,* 199 Mich App 670.

On appeal after remand, this Court articulated the applicable law:

> Publicly dedicated streets that terminate at the edge of navigable waters are generally deemed to provide public access to the water. *Thies v Howland*, 424 Mich 282, 295; 380 NW2d 463 (1985); *McCardel v Smolen*, 404 Mich 89, 96; 273 NW2d 3 (1978); *Backus v Detroit*, 49 Mich 110; 13 NW 380 (1882). The members of the public who are entitled to access to navigable waters have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. *Thies, supra* at 288. The right of a municipality to build a wharf or dock at the end of a street terminating at the edge of navigable waters is based upon the presumption that the platter intended to give access to the water and permit the building of structures to aid in that access. *Thies, supra* at 296. The extent to which the right of public access includes the right to erect a dock or boat hoists or the right to sunbathe and lounge at the road end depends on the scope of the dedication. *McCardel, supra* at 97; *Thom v Rasmussen*, 136 Mich App 608, 612; 358 NW2d 569 (1984). The intent of the dedicator is to be determined from the language used in the dedication and the surrounding circumstances. *Thies, supra* at 293; *Bang v Forman*, 244 Mich 571, 576; 222 NW 96 (1928). [*Jacobs (After Remand), supra,* 199 Mich App 671-672.]

This Court rejected, as evidence of the dedicator's intent, testimony that the lakefront had been used by the public for lounging and picnicking, and that boats had been anchored along the beach as long ago as the early 1920s, stating: "[W]e do not believe that this testimony established that the disputed activities are properly within the scope of the plat dedication of the streets for public use." *Id.* at 672. This Court reasoned:

> The testimony of the witnesses also indicated that during the 1920s and 1930s few people lived in the area and that those who did freely used the entire lakefront area for recreational purposes and for access to the lake. There was no indication that such activity was restricted to the road ends. In fact, because of the small number of people living in the area, there seems to have been no need to provide for or to restrict the activities of the public to the road ends. Thus, it appears likely that there would have been no intent on the part of the platter in 1902 to include, as part of the dedication of the roads to the public, anything more than access to the lake. [*Id.* at 673.]

This Court affirmed the trial court's findings that the scope of the dedication permitted the installation of one nonexclusive dock at the end of each road terminating at the lake, and that the public was entitled to reasonable use of the water for boating, swimming, and fishing. *Id.* at 673. This Court reversed the trial court on the question of shore activities and the erection of boat hoists, holding that such uses were not intended and that the trial court's findings in that regard were not supported by the record and were clearly erroneous. *Id.* at 671-673.

### D. APPLICATION OF *JACOBS*

Plaintiffs maintain that *Jacobs* is dispositive and that they are entitled to judgment as a matter of law in light of the identical dedication language in the subdivision plats at issue. Defendants contend that *Jacobs* only establishes the relevant inquiry, i.e., the intent of the dedicator, and that *Jacobs* was not intended to be applied generically in every case. Defendants maintain that the historical and traditional uses of the road ends show the dedicators'

intent to permit sunbathing, picnicking, lounging, boat hoists, and boat mooring at the road ends.

We agree with defendants that the interpretation of the dedicators' intent presents a factual inquiry. Although most of the dedications at issue occurred during the same ten-year period and contained identical dedication language, the dedicators were different and the intent of the dedicators in *Jacobs* cannot be imputed to all dedicators of all subdivision plats surrounding Higgins Lake. Therefore, we reject plaintiffs' argument that the interpretation of all Higgins Lake subdivision dedications of streets and alleys "to the use of the public" necessarily compels the same result as in *Jacobs*.

Although *Jacobs, supra,* requires a factual determination of the dedicator's intent in each case, we do not ignore the factual similarities between *Jacobs* and the cases at bar. This Court has previously applied *Jacobs* in addressing the scope of the dedication of the Evergreen Park subdivision. In an unpublished opinion,[5] this Court stated:

> In *Jacobs*, the precise dispute concerned the use of the road-ends at the waters of another Higgins Lake subdivision whose roads were similarly dedicated "to the use of the public." A panel of this Court rejected the defendants' attempt to establish the scope of the dedication through the testimony of witnesses who lived in the area for many years. The court interpreted the opaque dedication "to the use of the public" to include nothing more than the right to access the lake. We can discern no reason to interpret the similar dedication in the present case differently. Accordingly, we affirm the trial court'[s] finding that the scope of

---

[5] We recognize that unpublished opinions carry no precedential weight; however, we find this case instructive because it concerns Evergreen Park subdivision, which is involved in these appeals.

the dedication permitted the installation of one nonexclusive dock at the end of each of the roads leading to the lake, and that the public was entitled to reasonable use of the water for boating, swimming, and fishing. However, we reverse the portion of the trial court's order that determined that the erection of boat hoists and the shore activities were within the scope of the plat dedication because those findings were not supported by the record and were clearly erroneous. [*Higgins Lake Prop Owners Ass'n v Lyon Twp*, unpublished opinion per curiam of the Court of Appeals, issued May 30, 2000 (Docket No. 219768).]

In the instant cases, we likewise discern no record evidence to distinguish the dedications in a meaningful way from *Jacobs*. The use of the terms "streets" and "alleys" implies passage, and public roads that terminate at the edge of navigable waters are presumed to provide public access to the water. *Thies, supra* at 295; *McCardel, supra* at 96; *Backus, supra*. In light of the case law affirming this presumption, the burden rests with defendants to establish that anything other than mere access to the lake was intended. We note this Court's observation in *Jacobs* that in light of the sparse population in the area at the time these subdivisions were platted, it is reasonable to conclude that the dedication encompassed nothing more than access to the lake. *Jacobs (After Remand), supra,* 199 Mich App 673. Moreover, contrary to the township's claim that "meaningful access" must necessarily include shore activities, such a broad interpretation of the dedication language could potentially frustrate the purpose of giving the public access to the lake. The public access to the lake is compromised by the appropriation of the road ends to private use by a few individuals. In short, we conclude that this Court's reasoning in *Jacobs* is sound and that the records in the instant cases offer no evidence to

show that anything more than access to the lake was intended.

We reject defendants' reliance on *Dobie v Morrison*, 227 Mich App 536; 575 NW2d 817 (1998),[6] for their argument that the historical uses of the road ends are relevant to a determination of the scopes of the dedications. First, *Dobie* involved rights to a park, not to road ends, which this Court recognized as a meaningful distinction. *Dobie, supra* at 539 ("[A] park is not the same as a right of way."). Also, the *Dobie* Court stated that "[t]he intent of the plattors should be determined with reference to the language used in connection with the facts and circumstances *existing at the time of the grant*." *Id.* at 540, citing *Thies, supra* at 293 (emphasis added). Accordingly, in the absence of evidence that the historical uses of the road ends were contemporaneous with the dedication, the road-end activity occurring *after* the dedication are not helpful in determining the dedicators' intent.

### E. CONCLUSION

Plaintiffs do not dispute the public's right to have access to the lake at the road ends. Members of the public who gain access to a navigable waterbody

---

[6] *Dobie* involved rights to a park that separated the plaintiffs' property from Jordan Lake. The 1966 subdivision plat dedicated the park to "the use of the owners of lots in this plat which have no lake frontage." *Id.* at 537. The defendants were back lot owners who asserted riparian rights to the park. This Court held that the plaintiffs have sole riparian rights to the park. This Court also affirmed the trial court's finding that the scope of the dedication permitted the defendants to use the park "as they had done 'traditionally and historically.' " *Id.* at 541. In so holding, this Court distinguished *Thies* on the basis that a walkway separated the plaintiffs' property from the lake in *Thies,* and a park separated the plaintiffs' property from the lake in *Dobie. Dobie, supra* at 539.

have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. *Thies, supra* at 288. Lounging, sunbathing, picnicking, and the erection of boat hoists at the road ends are prohibited as beyond the scope of the dedications. Consistent with *Jacobs, supra,* one, nonexclusive dock may be erected at each road end to facilitate public access to the water. Members of the public are entitled to moor boats temporarily as an incident of the public's right of navigation. *Thies, supra* at 288; *Jacobs (After Remand), supra,* 199 Mich App 671-672. Because the plat language and the applicable law dictate that the road ends are intended to afford access to the public, private docks are not permitted at the road ends.

With respect to Docket Nos. 225419 and 225420 concerning Old Point Comfort subdivision, the trial court granted summary disposition for plaintiffs on the basis of *Jacobs.* In view of the evidence offered by defendants in opposition to summary disposition, which consisted mainly of historical uses of the road ends after the dedication, we conclude that the trial court did not err in granting summary disposition for plaintiffs. In Docket No. 225722 (Highland Park), the trial court clearly erred in finding that the scope of the dedication included the shore activities of sunbathing, picnicking, and lounging, as well as the mooring of boats other than on a temporary basis, and placing boat hoists at the road ends. In Docket Nos. 228357 (Triangle Park), 228602 (Shoppenagon's Lodge),[7] 229581 (Honolulu Beach), 229606 (Sovereign

---

[7] Docket No. 228602 involves both Lyon Manor and Shoppenagon's Lodge subdivisions. The *Jacobs* Court reviewed the trial court's findings concerning Lyon Manor subdivision.

Park), 231089 and 231181 (Whittington Park), and 234968 (Almeda Beach), the trial court's findings were not clearly erroneous. In none of the cases did the parties submit any evidence to distinguish them in a meaningful way from *Jacobs*. Accordingly, with respect to the trial court decisions that are consistent with *Jacobs*, we discern no error and affirm. With respect to the trial court decisions that are not consistent with *Jacobs*, we reverse.

### IV. INJUNCTIVE RELIEF

DOCKET NOS. 225419 AND 225420 (OLD POINT COMFORT), 228357 (TRIANGLE PARK), 228602 (LYON MANOR AND SHOPPENAGON'S LODGE), 229581 (HONOLULU BEACH), 229606 (SOVEREIGN PARK), 231089 AND 231181 (WHITTINGTON PARK), 234810 (EVERGREEN PARK), AND 234874 AND 234968 (ALMEDA BEACH)

In Docket Nos. 225419 and 225420 (Old Point Comfort), the trial court granted an injunction. In the remaining cases, Docket Nos. 228357 (Triangle Park), 228602 (Lyon Manor and Shoppenagon's Lodge), 229581 (Honolulu Beach), 229606 (Sovereign Park), 231089 and 231181 (Whittington Park), 234810 (Evergreen Park), and 234874 and 234968 (Almeda Beach), the trial court denied the request for injunctive relief. After reviewing the lower court records, we conclude that injunctive relief was not warranted in any of these cases.

We review a trial court's grant of injunctive relief for an abuse of discretion. *Michigan Coalition of State Employee Unions v Michigan Civil Service Comm*, 465 Mich 212, 216; 634 NW2d 692 (2001). The " 'granting of injunctive relief is within the sound discretion of the trial court, although the decision must not be arbitrary and must be based on the facts of the

particular case.' " *Id.* at 217, quoting *Holly Twp v Dep't of Natural Resources*, 440 Mich 891 (1992). See *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999); *Schadewald v Brulé*, 225 Mich App 26, 39; 570 NW2d 788 (1997).

Injunctive relief is an extraordinary remedy that courts normally grant only when " '(1) justice requires it, (2) there is no adequate remedy at law, and (3) there exists a real and imminent danger of irreparable injury.' " *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 110; 593 NW2d 595 (1999), quoting *ETT Ambulance Service Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 400; 516 NW2d 498 (1994). In *Kernen v Homestead Dev Co*, 232 Mich App 503, 514-515; 591 NW2d 369 (1998), this Court articulated the factors to be considered in determining the propriety of issuing an injunction:

> (a) the nature of the interest to be protected,
>
> (b) the relative adequacy to the plaintiff of injunction and of other remedies,
>
> (c) any unreasonable delay by the plaintiff in bringing suit,
>
> (d) any related misconduct on the part of the plaintiff,
>
> (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied,
>
> (f) the interests of third persons and of the public, and
>
> (g) the practicability of framing and enforcing the order or judgment.

"[A] real and imminent danger of irreparable injury must exist to support a grant of injunctive relief." *Head, supra* at 111, citing *ETT Ambulance Service, supra* at 400. See also *Wilkins v Gagliardi*, 219 Mich App 260, 276; 556 NW2d 171 (1996).

The evidence presented in each of these cases showed that the nature and frequency of activity at

the road ends varied considerably. For example, in Docket No. 228357 (Triangle Park), other than the testimony of witnesses that recreational activities and boat mooring are occurring at the road ends, plaintiffs offered no evidence to suggest a danger of irreparable harm that would warrant injunctive relief. Some of the testimony was speculative and addressed concerns of future impact. William Case, director of the HLPOA, testified that "eventually there will be a much more tremendous impact on the lake and on the shoreline of the lake unless there are limitations of some type put on how much usage can develop at the various road ends." The trial court found that "there is no evidence of harm period, let alone irreparable harm." In Docket No. 228602 (Lyon Manor and Shoppenagon's Lodge), one adjacent property owner testified that the use of one of the road ends has caused her to suffer "a great deal of damage, vandalism, [and] theft done to [her] property," but she admitted that she could not attribute the damage to any of the named defendants and she did not know who damaged or vandalized her property. Another witness described the situation as "disconcerting." In Docket Nos. 231089 and 231181 (Whittington Park), the testimony was general regarding "overcrowding" at the road ends, and did not appear to pertain to Whittington Park subdivision specifically. In Docket Nos. 234810 (Evergreen Park),[8] and 234874 and 234968 (Almeda Beach), the individuals who testified

---

[8] In Docket No. 234810 (Evergreen Park), which was before the trial court on remand from this Court, the court conducted an evidentiary hearing regarding the propriety of injunctive relief in light of this Court's ruling regarding the scope of the dedication. At the hearing, the court heard testimony regarding the effect this Court's prior decision would have on property values in the subdivision.

regarding the extent of their current uses of the road ends all indicated that they would abide by a court decision that restricted use of the road ends without any further order.

In general, some witnesses testified about using the road ends without any problems or conflicts. They testified that they did not attempt to preclude use of the road ends by others, nor was their use impeded. Other than a few isolated instances, the evidence showed that persons who use the road ends have done so without difficulty and have not interfered with others' use and enjoyment of the lake. Much of the testimony concerning the road end use merely established that it was occurring, but that it was not disruptive and had prompted no complaints. In other cases, witness testimony showed that use of certain road ends was more problematic, resulting in congestion and that the use was detrimentally affecting the adjacent property owners' use and enjoyment of their properties. During holiday times, the congestion at the road ends has prevented use of the lake because of the number of parked cars at the road ends. Also, testimony was offered in some cases that property values were affected by road end use.

Common to all these cases, however, despite the variance in degree and type of use, is a lack of showing of irreparable harm to warrant injunctive relief. Although plaintiffs offered evidence that the challenged activities at the road ends are occurring, they did not show a likelihood of irreparable harm if an injunction is not issued.[9] Further, in addition to a fail-

---

[9] Evidence that property values are or will be affected does not rise to the level of irreparable harm. See *Kernen, supra* at 515, affirming the denial of injunctive relief ("Here, other than general claims that the value

ure to show a danger of irreparable harm, concerns related to "the practicability of framing and enforcing the order or judgment" as well as "the relative adequacy to the plaintiff of injunction" militate against injunctive relief. *Kernen, supra* at 515.

The problems inherent in "framing and enforcing the order or judgment" were illustrated by the trial court's questions to Robert Frye, president of the HLPOA, in the cases involving Whittington Park and Almeda Beach subdivisions. The court asked Frye exactly what are the activities that plaintiffs seek to have the court enjoin. For instance, the court asked him to define what behavior constitutes sunbathing, asking whether it is considered sunbathing if a person is standing up and getting tan. Frye defined "sunbathing" as lying on the ground or in a chair while tanning. He defined "lounging" as passing the time of day in a singular location in a relaxed way for over half an hour. With regard to picnicking, he was asked whether he would consider a person to be picnicking if the person stands at the road end eating French fries and drinking pop. Frye testified that this activity would not be considered picnicking. Frye emphasized that the HLPOA does not object to a public dock at the end of each road end; the HLPOA seeks to enjoin the mooring of boats. This prompted the court to inquire about Frye's understanding of the term "mooring." According to Frye, mooring is holding a boat in a particular place for a period, perhaps twenty-four hours,

of their property will be lowered in the eyes of prospective purchasers and that plaintiffs have a basic right to its exclusive use and possession, plaintiffs presented no evidence that they will suffer any specific, let alone irreparable, harm to their property.")

or overnight, on a hoist, on a cement block, on an anchor, or tied to a dock.

In the Almeda Beach Subdivision action, defense counsel cross-examined Case about whether the HLPOA was trying to prevent a grandmother and her grandson from sitting on the shore at a road end and having a picnic lunch. Case answered that he did not think so. When he was asked whether a group of school children should be allowed to congregate at the road ends, and how large the group would have to be for the HLPOA to object, Case answered that the HLPOA would object to a group that is disruptive in nature, but he admitted that the HLPOA has not attempted to define "disruptive." Case explained: "If four or five kids come down at the road end and they are playing down there, I don't think that there is going to be any great disruption of anything, I couldn't foresee them causing a problem, but if 50 or 60 came down there and were doing the same thing, I could see a cause for concern." He admitted that he has never seen that many persons at a road end at one time.

With respect to "the relative adequacy to the plaintiff of injunction," *Kernen, supra,* in the Almeda Beach case, plaintiffs' counsel clarified that the request for injunctive relief pertained only to the named defendants, and acknowledged that the court could not enjoin individuals who are not named in the action. Case conceded one defense counsel's point that if the court enjoined the named defendants from certain activities, that would make it easier for others from downstate to drive to the lake with their trailers and engage in the same activities, which might result in greater traffic and congestion at the road ends.

In the cases before us, injunctive relief is therefore not warranted at this time. Considering the relevant factors and examining the evidence presented, we conclude that in none of these cases have plaintiffs established irreparable harm. Many individuals who testified indicated that they would abide by a court decision without any further order. We hold that the trial court abused its discretion in granting injunctive relief in Docket Nos. 225419 and 225420 (Old Point Comfort). The court did not abuse its discretion in denying injunctive relief in the remaining cases.

After our decision, which clarifies the scope of the plat dedications, injunctive relief may be warranted if impermissible use of the road ends continues. We are sympathetic to the difficulty of resolving these disputes case by case. However, we will not engage in a futile attempt to anticipate every situation that may arise in the future.[10] The propriety of injunctive relief must be fact-driven. For example, two persons standing at a road end for a short period might not pose a problem, but a group of fifty persons that regularly congregates for hours may be a proper basis for an injunction. Similarly, the mooring of a boat at a road end for a few hours may be considered temporary and have no effect on lake access by others, while mooring a boat for several days at a time may be deemed beyond temporary and inconsistent with the public's right of access.[11] We are not inclined to set an

---

[10] Some evidence was offered below regarding the number of vehicles that have been parked at the road ends. Parking at the road ends is a matter for the municipalities to regulate, provided that access to the lake is not impeded.

[11] The preservation of lake access through the road ends for members of the public necessarily requires some limitation on the use of the road ends. As road ends become sites of greater concentration of boats and

arbitrary length of time beyond which mooring would not be considered temporary. It is clear from the plat language and the applicable case law that the public has a right to have access to the lake at the road ends. This right of access is paramount and should be the guiding principle in resolving future disputes concerning the use of the road ends.

V. REQUEST TO VACATE MONTROSE AVENUE: DOCKET NO. 225420

In Docket No. 225420, plaintiffs-appellants Richard and Jacqueline Branch and Robert and Donna Sanborn requested that the court vacate a portion of Montrose Avenue in Old Point Comfort subdivision. Old Point Comfort subdivision was platted in 1905. Montrose Avenue terminates at the shore of Higgins Lake. The Branches and the Sanborns own lakefront property on either side of Montrose Avenue. They sought to vacate the road and obtain title to the land on the ground that no effective dedication of the land occurred, and therefore the road is not public property. At issue is whether the language in the subdivision plat dedicating all the streets and alleys to the public was an offer to dedicate the land now known as Montrose Avenue, and whether the offer was accepted by a public body. The trial court found a clear offer to dedicate, as well as an acceptance, and

_____

persons, the ability of others to access the lake at those road ends likely would be affected. Obviously, it is not feasible for every person who so desires to permanently moor a boat at one of the road ends. Clearly, if a few individuals build their own docks or keep boat hoists at the road ends, they are effectively appropriating the public road ends for their own private use, which would impede the public's access to the lake. We suggest that a legislative solution is warranted to control the road end activity in a better manner.

therefore denied the request to vacate Montrose Avenue.

This Court reviews a trial court's findings of fact for clear error. *Christiansen, supra* at 390. We review de novo issues of statutory interpretation and application. *Id.* at 388.

Generally, a valid statutory dedication of land for a public purpose requires two elements: (1) a recorded plat designating the areas for public use; and (2) acceptance by the proper public authority. *Christiansen, supra* at 383-384, citing *Kraus v Dep't of Commerce,* 451 Mich 420, 424; 547 NW2d 870 (1996). "The acceptance must be timely, and it must be accomplished by a public act " 'either formally confirming or accepting the offer of dedication, and ordering the opening of such street, or by exercising authority over it, in some of the ordinary ways of improvement or regulation." ' " *Christiansen, supra* at 384, quoting *Kraus, supra,* quoting *Tillman v People,* 12 Mich 401, 405 (1864). A court has jurisdiction to vacate land that has been dedicated for public use but has not been accepted by public authorities. *Marx v Dep't of Commerce,* 220 Mich App 66, 75; 558 NW2d 460 (1996); MCL 560.226(1).

Plaintiffs-appellants first argue that the trial court erred in finding a clear offer to dedicate the land known as Montrose Avenue. We disagree.

The trial court found that the subdivision plat did not specifically mention Montrose Avenue. At the time of the dedication, the land now known as Montrose Avenue was an unnamed strip of land. The court noted the testimony of Roscommon County Road Commissioner George Pappas that it was not unusual for streets in subdivision plats to be unnamed. Also,

the court referenced the subdivision plat itself and observed that without using Montrose Avenue, there "is no way to get to some of the front lots except through some of the back lots, but there is no reservation of easements." The court specifically found that the subdivision plat contained an offer to dedicate the land now known as Montrose Avenue by its language dedicating all the streets and alleys in the plat "to the use of the public." We discern no clear error in the trial court's findings.

Plaintiffs next argue that even if the subdivision plat contained a clear offer to dedicate the land at issue, the offer was not accepted by a public authority within a reasonable time, if at all, and therefore the offer has lapsed and the attempted dedication fails. Defendants-appellees maintain that the county formally accepted the offer to dedicate through the passage of resolutions under the McNitt Act, MCL 247.1 *et seq.*, which incorporated the land into the county road system. Defendants-appellees also argue that the 1978 amendment of the Subdivision Control Act, MCL 560.255b, created a presumption of acceptance. The trial court concluded that a McNitt resolution effected acceptance of the dedication by the county.

We need not consider whether the McNitt resolutions in this case were sufficient to constitute formal acceptance of Montrose Avenue.[12] We resolve this

---

[12] The McNitt Act, MCL 247.1 *et seq.*, passed in 1931, provided a means by which township roads would be taken under the jurisdiction of the county and incorporated into the county road system. The statute required the board of county road commissioners in each county, beginning in April 1932, to "take over and incorporate into the county road system, twenty per cent of the total township highway mileage so determined and fixed by the state highway commissioner in each township of their

issue on the basis of MCL 560.255b, the 1978 amendment of the Subdivision Control Act (formerly the Land Division Act) that creates a presumption of acceptance. The amended statute provides with respect to land dedicated for public use:

(1) Ten years after the date the plat is first recorded, land dedicated to the use of the public in or upon the plat shall be presumed to have been accepted on behalf of the public by the municipality within whose boundaries the land lies.

(2) Presumption is conclusive unless rebutted. The presumption prescribed in subsection (1) shall be conclusive of an acceptance of dedication unless rebutted by competent evidence before the circuit court in which the land is located, establishing either of the following:

(a) That the dedication, before the effective date of this act and before acceptance, was withdrawn by the plat proprietor.

(b) That notice of the withdrawal of the dedication is recorded by the plat proprietor with the office of the register of deeds for the county in which the land is located and a copy of the notice was forwarded to the state treasurer, within 10 years after the date the plat of the land was first recorded and before acceptance of the dedicated lands.

Plaintiffs argue that the amendment of the Land Division Act does not apply to plats recorded before 1978. Contrary to plaintiffs' claim, our Supreme Court in *Vivian v Roscommon Co Bd of Rd Comm'rs*, 433

---

respective counties." In each successive year, the boards were to take an additional twenty percent of the remaining township highway mileage "until the entire township highway mileage in all of the townships of each of such counties has been taken over and made a part of the county highway system. In the year next following the taking over of all such highways all dedicated streets and alleys in recorded plats and outside of incorporated cities and villages shall be taken over and become county roads." *Marx, supra* at 71, quoting MCL 247.2.

Mich 511, 521; 446 NW2d 161 (1989), held that the amendment operates retroactively:

> The Attorney General asserts that no construction of § 255b will give any effect to the words "before the effective date of this act" in clause (a) "except by applying the provision to plats that existed before the effective date of the act." We agree that clause (a) applies to plats recorded before the effective date of the 1978 amendment adding § 255b. To that extent we agree with the Attorney General that the Legislature "has indicated its intent that the act should operate retroactively."

Accordingly, defendants-appellees in this case are entitled to a statutory presumption of public acceptance of all previously platted roads, and plaintiffs have the burden of rebutting the presumption by showing that the offer to dedicate was withdrawn. *Kraus, supra* at 425. In the trial court, plaintiffs on more than one occasion indicated that they were not proceeding on a theory of withdrawal and that they were not attempting to establish a withdrawal of the offer to dedicate. Also, the parties did not dispute that neither the Sanborns nor the Branches took any action to exclude the public from Montrose Avenue, and the public continued to use Montrose Avenue. We conclude that plaintiffs have failed to rebut the statutory presumption of acceptance under MCL 560.255b. Therefore, the trial court properly denied plaintiffs' request to vacate Montrose Avenue.

### VI. NATURAL RESOURCES ENVIRONMENTAL PROTECTION ACT, DOCKET NO. 225722

Plaintiffs-appellants in Docket No. 225722, concerning Highland Park subdivision, argue that the trial court erred in failing to grant the alternative relief

requested under the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30102, which prohibits the operation of a marina without a permit. They contend that the large number of boats that are allowed to be moored at the dock at the end of Highland Park Street constitutes a marina, and that the operation of such a marina by certain defendants is in violation of the NREPA.

Plaintiffs did not seek relief under the NREPA. Because this issue was not raised in the pleadings, nor argued below, we need not address it. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993); *Lantz v Southfield City Clerk*, 245 Mich App 621, 627 n 4; 628 NW2d 583 (2001); *Head, supra* at 110 ("This Court will not review a case on a theory different from that on which it was tried.").

#### VII. ADVERSE POSSESSION OF ROAD ENDS IN ALMEDA BEACH SUBDIVISION: DOCKET NO. 234968

Defendants-appellants in Docket No. 234968, concerning Almeda Beach subdivision, argue that the public has acquired rights to the road ends by adverse possession. Although defendants-appellants argue a theory of adverse possession, in substance their claim is one asserting that the public has an easement by prescription to use the road ends for recreational purposes. See *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000), citing *Schadewald, supra* at 35.

This Court reviews de novo a trial court's holdings in equitable actions. *Gorte v Dep't of Transportation*, 202 Mich App 161, 165; 507 NW2d 797 (1993). We review the trial court's findings of fact for clear error.

*Grand Rapids v Green*, 187 Mich App 131, 135-136; 466 NW2d 388 (1991).

An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years. *Plymouth Canton Community Crier, supra* at 679; *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 645; 528 NW2d 221 (1995); MCL 600.5801(4), see also *Marr v Hemenny*, 297 Mich 311; 297 NW 504 (1941); *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976); *Dyer v Thurston*, 32 Mich App 341, 343; 188 NW2d 633 (1971). An easement by prescription requires elements similar to adverse possession, except exclusivity. *Plymouth Canton Community Crier, supra* at 679 ("[E]xclusive use, in the sense of use by only one individual or entity, of another's land is not required to establish a prescriptive easement."); see also *West Michigan Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995).

Governmental entities are generally immune from adverse possession actions. MCL 600.5821; *Goodall, supra* at 647. "[T]he Legislature has decided that a claim of adverse possession against state lands is against public policy and, therefore, will not be recognized." *Id.*; see also *Gorte, supra* at 161. MCL 600.5821(1) provides:

Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. However, a person who could have asserted claim to title by adverse possession for more than 15 years is entitled to seek any other equitable relief in an action to determine title to the land.

The statute does not operate to extinguish rights that have vested before the effective date of the statute, March 1, 1988. *Gorte, supra* at 167-168.

In *Kempf v Ellixson,* 69 Mich App 339; 244 NW2d 476 (1976), this Court addressed the circumstances under which a public easement may be acquired by prescription. *Kempf* was a consolidation of three cases involving property rights in a portion of the shore of Higgins Lake. *Id.* at 340. The actions were brought by property owners whose lots were bounded by Sam-O-Set Boulevard, which runs along the shore. *Id.* At issue in *Kempf* was the use of the lakeshore by back lot owners and the general public, and whether their continuous use of the shore established an easement by prescription.[13] *Id.* This Court held that mere use of property is insufficient to establish a public easement by prescription:

> We think it safe to say that unless there has been some action by representatives of the public, *i.e.* the government, a "public" easement cannot be established by prescription. Recreational use of an area by various individuals over a period of years is insufficient to establish a public easement.
>
> *        *        *
>
> For example, to establish a road as a public road by user, the Supreme Court of Michigan has required more than mere use by the public; "to establish it as such, there must also have been acceptance by the public at least by taking

---

[13] As in the case at bar, the back lot owners' claim was labeled as one of adverse possession. This Court noted that "[w]hile the record frequently mentions adverse possession, it appears that acquisition of easements by prescription, rather than acquisition of title, was claimed by appellants at trial." *Kempf, supra* at 343, n 3.

over control and maintenance of some portion of such road." *Bain v Fry*, 352 Mich 299, 305; 89 NW2d 485 (1958).

We believe that establishment of public recreational rights by prescription requires at a minimum governmental action to facilitate and control recreational use. It does not appear that the public has established by prescription any recreation easement over the area in question. [*Kempf*, *supra* at 343-344.]

In the case at bar, defendants-appellants' claim of right to use the road ends is based solely on the recreational use of the road ends by various individuals over a period of years. The individual defendants in Almeda Beach who argue that they have acquired prescriptive rights to the road ends do not address the *Kempf* case, nor do they argue that any governmental action occurred "to facilitate and control recreational use." *Id.* at 343-344. Because mere use of the property is insufficient to established a public easement by prescription, defendants-appellants' claim fails.

Affirmed in part and reversed in part.