*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM KRAUS and BARBARA KRAUS,

        Plaintiffs/Counterdefendants-
        Appellants,

v

MICHAEL LINK, LEANNE LINK, JAMES
ASCENCIO, DAVID SAWECKI, KEVIN BATES,
RENEE BATES, MARK KRYSKA, IRINA
KRYSKA, and ZACHARY RZOTKIEWICZ,

        Defendants/Counterplaintiffs-
        Appellees,

and

WESLEY LECKENBY, TERRY OSMUN,
DAPHNE SMITH, MARK ASHBAUGH, JOHN
BUCHANAN, RAUL UNZUETA, BRYAN
HOFFMEYER, LEE BREWER, MARGARET
BREWER, DAVID COOK, KEITH CLARK,
KRISTA CLARK, MATTHEW ALLISTON,
RAYMOND COOK, ROBERT WALEGA,
LAWRENCE WESSON, JEFFREY LAURIE, JR.,
REBECCA OUBECK, MICHAEL HILLEY, RUTH
SHOUPE, STANLEY SULLIVAN, KAREN
ASCENCIO, BEN THORSEN,  MAUDLIN
RENTAL, MICHAEL J. OUELLETTE, NANCY
SIMMONS, TUTTLE FAMILY, ROLLIN TUTTLE,
JR., TERRI GARIEPY, DAVID LADOMER,
MICHAEL HAYENS, KELLY CARUSS, DEBRA
SOOP, GARY POPIELA, MARIAL MENDELSON,
CLEMENCE FADEL, ROSE SHAYA, TED
MARCH, ANTHONY FONTAN, ERICA
FLANIGAN, DONNA FUGA, MATTHEW
KURILUK, COURTNEY KURILUK, STACEY

UNPUBLISHED
May 12, 2022

No.   356760
Oakland Circuit Court
LC No.   2017-158234-CH

MEDEN, CHRIS DUNN, CHRISTOPHER
POSTEMA, DANIEL CODGES, ARNOLD
FISHER, LORRAINE FISHER, CHARLIE GATT,
SHERYL GATT, NEW CHAPTER HOMES, KOPY
LUCAK, BRIAN HILFINGER, LAURA VAUGHN,
PALMA WEAVER, GLENDA A. HAMILTON,
THELMA NAPIER, RAYMOND HOYER, CITY
OF NOVI, and LINDA POSTMA,

        Defendants.

_____

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

This matter is before this Court for the second time after a remand to the circuit court and concerns the scope of the rights of defendants, backlot owners, to Walled Lake under a restrictive covenant created in 1922. On remand, the circuit court determined that the grantors intended to allow defendants to engage in activities unrelated to the water beyond mere access and to give them riparian rights, including the ability to moor boats at docks overnight, and granted defendants summary disposition. Plaintiffs, front lot owners, appeal this decision by right. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. *KRAUS I*

This Court summarized the facts of this matter in a previous unpublished opinion, *Kraus v Link*, unpublished per curiam opinion of the Court of Appeals, issued January 30, 2020 (Docket No. 347044), pp 2-3 & n 1 (*Kraus I*):

The Idlemere Park Land Co. platted the Idlemere Park Subdivision and recorded in the Oakland County Register of Deeds the approved plat map on April 17, 1917. The subdivision plat map featured a road called Lakeside Drive that ran along the lakeshore separating developable residential lots from four elongated lakeside lots designated as Lots 141, 142, 143, and 144. Several subdivision roads intersected with and terminated at Lakeside Drive. On August 10, 1922, George and Anna Weitzel conveyed lots within the subdivision subject to restrictive covenants that ran with the land. In December 1932, the Novi Township Board approved the replatting and subdivision of Lots 142, 143, and 144, pursuant to "Supervisors Replat of Lots 142, 143 and 144 of Idlemere Park" which created additional lots along the lakeshore adjacent to Lakeside Drive on former Lots 142, 143, 144. The replatted lots not only created lakefront lots but also Outlots A through G located on Lakeside Drive where Elmwood Drive, Lilac Walk, Maplewood Drive, Lakewood Drive, Beechwood Drive, Oakwood Drive, and Willow Walk intersected and terminated at Lakeside Drive. Outlot F is the lakefront lot located where Beechwood Drive intersected with Lakeside Drive.

On August 7, 1985, plaintiffs acquired Lot 91 and the east 40.3 feet of Lots 92 and 93, plus Lot 24 of the Idlemere Park Subdivision, subject to easements and restrictions of record. Lot 24 is lakefront property that lies adjacent to and borders on the west of Outlot F which is located on South Lake Drive, formerly known as Lakeside Drive, where Beechwood Drive, now known as Bernstadt Street, intersects it. At various times, defendants acquired their lots within the subdivision similarly subject to the restrictive covenants and easements of record. Defendants' lots do not have frontage on the lake. During 2015, defendants Michael J. Link and Leanne M. H. Link, his wife, Wesley Leckenby, Terry Osmun and his wife, Daphne Smith, erected and used a dock for mooring boats at Outlot F. They also used Outlot F for sunbathing, picnics, bonfires, and other activities. Plaintiffs hired an attorney who sent a letter demanding that these defendants stop using Outlot F for any purpose and removal of the dock. These defendants responded by explaining that restrictive covenants permitted their activities. After sending them another letter which did not result in the desired response, plaintiffs sued the Links, Leckenby, Osmun, and Smith for a declaratory judgment that their activities violated MCL 324.30111b of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*. and for injunctive relief. These defendants denied the allegations of wrongdoing and any liability to plaintiffs and countersued for among other things declaratory and injunctive relief.[1]

The Links, Leckenby, Osmun, and Smith moved for summary disposition under MCR 2.116(C)(8) and (10) on the grounds that recorded restrictive covenants applicable to the Idlemere Park Subdivision reserved seven lakefront outlots for the use and enjoyment of the subdivision's lot owners who did not have frontage on the lakeshore. They admitted that they installed a dock and used Outlot F for activities unrelated to the water but asserted that they had the right to do so under the restrictive covenants which they argued granted them riparian rights. Plaintiffs opposed the motion. They conceded that restrictive covenants granted defendants an easement to access the lake and to erect a dock, but they argued that defendants' rights were very limited. The trial court agreed with plaintiffs' interpretation of the restrictive covenants and ruled that defendants had an easement of access to the lake for water-related activities only and that they were permitted to erect docks at specified outlots for daily use but not for seasonal or overnight mooring of watercraft.

---

[1] The trial court later ordered plaintiffs to file an amended complaint to join all backlot owners within the subdivision because their rights would be affected by the court's rulings in this case. After requests by plaintiffs to reverse or amend that order, plaintiffs filed an amended complaint adding approximately 60 additional defendants[,] some of whom were dismissed upon stipulation by the parties.

On appeal in *Kraus I*, unpub op at 11, this Court determined that the language of the restrictive covenant was ambiguous. The restrictive covenant provided:

This property is sold subject to the following restrictions which run with the land made for the benefit of all owners of lots one (1) to One Hundred Forty-Six (146) inclusive.

* * *

This contract is made by said first party and accepted by said second party with the express understanding and agreement that no building of any character shall ever be erected on Lots 142, 143, 144 of said Subdivision, said lots being on the north side of the lake highway and fronting Walled Lake.

* * *

Further that the purchasers of all lots in said subdivision other than the lots fronting on lake road shall have a perpetual right of way or easement over and across the lake those parts of Lots 142, 143, 144, immediately in front of and in line with Elmwood Drive, Lilac Walk, Maplewood Drive, Lakewood Drive, Beechwood Drive, Oakwood Drive, and Willow Walk, to Walled Lake.

* * *

Further that all purchasers of lots other than those carrying individual lake frontage shall give their best efforts and aid in keeping their portion of Lots 142, 143, 144 over which the perpetual right of way and easement in the lake is granted in a clean orderly condition and free from papers, rubbish and other debris.

* * *

It is further mutually agreed between the parties of this contract, that the first party is to build at the end of Beechwood Drive, Maplewood Drive and Elmwood Drive of said subdivision, docks to be used by said second parties. In consideration of the building of said docks the said second parties agree to maintain the same and keep said docks in proper repair at their own expense. Said second parties further agree to relieve first party of all liability by reason of failure to keep said docks in proper repair or by reason of improperly maintaining same.

First parties agree to cut weeds and rushes along lake shore line and second parties agree to keep said weeds and rushes cut and become responsible for the appearance of said shore line from this date. [*Id*. at 6-7.]

This Court found that the easement provision was ambiguous because it did not clearly limit defendants' rights, and the dock provision was ambiguous because the scope of use is undefined. *Id*. at 9-10. Considering the easement and dock provisions, along with the outlot maintenance and shoreline maintenance provisions together, the latter two of which implied rights greater than mere access, this Court concluded that the restrictive covenant "appears less restrictive than the trial court ruled and certainly not as severely limited as plaintiffs contend." *Id*. at 11. Accordingly, because an analysis of the restrictive covenant did not support the circuit court's

interpretation, this Court reversed the circuit court's determination that the covenant restricted defendants' rights to mere access. *Id*. at 11-12.

Next, cognizant that extrinsic evidence may be considered when contractual language is ambiguous, the *Kraus I* Court noted that the record did not include any extrinsic evidence to aid in the interpretation of the covenant. *Id*. at 11. In particular, this Court noted that historical evidence would shed light on the grantor's intent, including historical evidence at the time of the creation of the restrictive covenant or during the almost 100 years of the subdivision's existence. *Id*. Accordingly, this Court found that extrinsic evidence should have been considered and remanded the matter to the circuit court subject to the following instructions:

> On remand, the trial court should determine the scope of defendants' rights under the restrictive covenants by taking into consideration the individual provisions in conjunction with and in the context of the other provisions and also look outside the four corners of the restrictive covenants to examine extrinsic evidence to determine the intent of the drafter and grantor in this regard. *The trial court should consider evidence of the historical use of the outlots and docks by subdivision lot owners*. The trial court must bear in mind that restrictive covenants "are construed strictly against grantors and those claiming the right to enforce them and all doubts are resolved in favor of the free use of property." *O'Connor* [*v Resort Custom Builders, Inc*], 459 Mich [335,] 341-342[; 591 NW2d 216 (1999)]. *The trial court must examine the language of the easement and the surrounding circumstances at the time of the grant* and consider whether the use would unreasonably interfere with the riparian lot owners' use and enjoyment of their property. [*Kraus I*, unpub op at 12 (emphasis added).]

## B. PROCEEDINGS ON REMAND

On remand, the circuit court reopened discovery to allow the parties to gather historical evidence regarding the use of the lakefront lots. Defendants moved for summary disposition under MCR 2.116(C)(10). To start, defendants asserted that the first land transfers following the initial platting in 1917 were conveyances subject to the restrictive covenant and, consequently, reflected that the grantors never intended for the lakeside lots (lots 142, 143, and 144) to be developed, improved, divided, or sold. Instead, given the discrepancies in the restrictive covenant, defendants explained that the grantors intended for both lake-road-fronting owners and backlot owners to have permanent rights and access to the lakeside lots. That the restrictive covenant obligated backlot owners to maintain the easements and maintain the docks, while obligating both backlot owners and lake-road-fronting owners to keep the shoreline free and clear, implies that all owners in the subdivision shared a benefit, i.e., access and full use and enjoyment of the lakeside lots as a communal private riparian park. For additional support, defendants relied on an allegedly analogous restrictive covenant at Welfare Lakeview Subdivision and historical evidence. The historical evidence included: advertisements, including a 1920 Detroit Free Press ad, a 1940 Department of Natural Resources (DNR) survey showing multiple long docks connected to the outlots, and letters from Idlemere Park residents indicating that the outlets have been used and enjoyed communally, including the overnight mooring of boats, since at least 1970.

Plaintiffs responded that summary disposition should be entered in their favor because defendants had not met their burden of showing that the grantors intended to grant defendants any riparian rights beyond mere access to the lake. According to plaintiffs, the grantors merely intended to shift certain maintenance duties of the shoreline to backlot owners and did not, thereby, intend to allow overnight mooring of boats or use of the outlots for activities unrelated to the water. Plaintiffs argued that historical evidence that is not contemporaneous with the creation of the restrictive covenant in 1922 is not relevant to its scope, and this is well-established law under *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 662 NW2d 387 (2003), aff'd 469 Mich 907 (2003). Plaintiffs asserted that defendants' historical evidence dated back only as far as the 1940s and is, thus, irrelevant because the restrictive covenant was created in 1922. In short, plaintiffs posited that backlot owners have no riparian rights and only have mere access to the lake.

In its written opinion, the circuit court methodically addressed the parties' evidence. The court found that the early deeds before the replat, which were bound by the restrictive covenant that prohibited buildings on lots 142, 143, and 144, and the replat in 1932, which allowed buildings on those same lots, made it difficult to determine the intent of the grantors. The circuit court found that defendants' reliance on the alleged analogous restrictive covenant of Welfare Lakeview Subdivision uncompelling because that covenant was not relevant to the intent of the Idlemere Park grantors. However, the court noted the other evidence defendant submitted, including the 1940 DNR survey and aerial photographs, photographs from 1976, images of plaintiffs using the outlots, and current and former residents' statements regarding the historical use of Outlot F. Of this evidence, the court found the statements of the current and former residents the most persuasive, which stated that:

> they and/or other residents maintained a dock, re-built a dock, installed a sea wall, moored boats overnight, and used the outlots for family reunions, picnics, to watch fireworks, have BBQ's, and have bonfires for at least 40 years. One individual stated that picnics and bonfires dated back to his childhood as early as 1947, and that same individual moored his own boat off the beach as an adult.

The circuit court noted that plaintiffs had not provided any additional extrinsic evidence other than that which the Court of Appeals previously found insufficient in *Kraus I*. While plaintiffs had argued that defendants had failed to provide any contemporaneous historical evidence of the outlots' use in 1922, neither had plaintiff, and plaintiff failed to rebut the statements of the current and former residents.

Given the foregoing, the circuit court concluded:

> [T]he intent of the grantors was to allow the residents who own backlots in [Idlemere Park Subdivision], the ability to use the outlots, and specifically Outlot F, for activities which include, but are not limited to sunbathing, picnicking, gathering, and lounging. The Defendants have shown that historically, the outlots have been used for activities that go beyond simply traversing the outlots. Further, the Court finds that the intent of the grantors was to give the Defendants, as backlot owners, riparian rights, including the ability to build, maintain, and use the docks, and for overnight mooring of boats on the docks, specifically on the dock at Outlot

F. This usage will not unreasonably interfere with the riparian lot owners' use and enjoyment of their property.

## II. STANDARD OF REVIEW

"The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010). "The interpretation of restrictive covenants is a question of law that this Court reviews de novo." *Eager v Peasley*, 322 Mich App 174, 179; 911 NW2d 470 (2017) (quotation marks and citation omitted). This Court also reviews de novo the circuit court's decision to grant or deny summary disposition. *Blackhawk Dev Corp*, 473 Mich at 40. Evidentiary decisions are reviewed for an abuse of discretion. *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 87; 910 NW2d 691 (2017).

## III. ANALYSIS

## A. EXTRINSIC EVIDENCE

On appeal, plaintiffs first argue that the circuit court erred by considering evidence of historical use that was not contemporaneous with the creation of the restrictive covenant. Plaintiffs claim, when considering the intent of the grantors where the language is ambiguous, that *Higgins* created a well-established evidentiary rule that historical use is not relevant to determine the intent of the grantors unless the use was contemporaneous with the grant. In other words, it is plaintiffs' contention that only contemporaneous historical extrinsic evidence may be considered in construing the ambiguous language of the restrictive covenant. We disagree.

At the outset, plaintiffs have not explained how the outcome would have been different had the circuit court not considered the extrinsic evidence that was not contemporaneous with the adoption of the restrictive covenant. Additionally, plaintiff has also not explained why the evidence that the court did consider was not relevant. Failure to develop an argument constitutes abandonment of the claim. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). In fact, in remanding this matter for consideration of extrinsic evidence, the *Kraus I* Court found that historical evidence not contemporaneous with the adoption of the restrictive covenant was relevant to the circuit court's inquiry on remand, and directed the circuit court to consider historical evidence regarding the use of the outlot and the use of docks by subdivision lot owners without limiting the evidence to that contemporaneous with the grant. See *Kraus I*, slip op at 11-12 (recognizing that the record lacked any evidence of lot owners' historical understanding of the scope of the docks' usage and the lot owners' conduct "during the almost 100 years of the subdivision's existence" respecting the use of the docks, thereby suggesting such evidence was relevant). To agree with plaintiffs and reach the opposite conclusion, then, would be inconsistent with *Kraus I* and would arguably violate the law of the case doctrine. That doctrine "provides that an appellate court's decision will bind a trial court on remand and the appellate court in subsequent appeals." *Duncan v Michigan*, 300 Mich App 176, 188-189; 832 NW2d 761 (2013) (quotation marks and citation omitted).

Notwithstanding these multiple fatal failures, plaintiffs also misconstrue *Higgins*, 255 Mich App 83, and the relevant law as creating a contemporaneous-use rule. In *Higgins*, this Court construed the scope of the public's right to use road ends that terminated at Higgins Lake, which was controlled by dedication language in various subdivision plats. *Id*. at 88. This Court found persuasive a prior decision, *Jacobs v Lyon Twp*, 181 Mich App 386; 448 NW2d 861 (1989), vacated 434 Mich 922 (1990), and *Jacobs v Lyon Twp (After Remand)*, 199 Mich App 667; 502 NW2d 382 (1993), interpreting a substantially similar dedication also at Higgins Lake and concluded that, as in *Jacobs*, no evidence showed that "anything other than mere access to the lake was intended." *Higgins*, 255 Mich App at 102-103. Historical evidence at the time of the dedication supported that the dedication "encompassed nothing more than access to the lake[,]" i.e., a smaller number of people used the entire lakefront area such that there would be no intent by the platter to include anything more than access to the lake. *Id*. at 100, 102. In rejecting the defendants' argument that the historical uses of the road ends should favor a more expansive scope of use, this Court stated,

> in the absence of evidence that the historical uses of the road ends were contemporaneous with the dedication, the road-end activity occurring *after* the dedication are not helpful in determining the dedicators' intent. [*Id*. at 103.]

In support of this statement, this Court quoted a rule of construction recognized in *Thies v Howland*, 424 Mich 282; 380 NW2d 463 (1985)—that "[t]he intent of the plattors should be determined with reference to the language used in connection with the facts and circumstances *existing at the time of the grant*." *Higgins*, 225 Mich App at 103 (quotation marks and citations omitted); see also *Thies*, 424 Mich at 293 ("The intent of the plattors must be determined from the language they used and the surrounding circumstances.").

Contrary to plaintiffs' position, this passage in *Higgins* arguably did not create a bright-line contemporaneous-use rule that prohibits consideration of extrinsic historical evidence not contemporaneous with the grant when construing an ambiguous grant in every case. Rather, in context, *Higgins* can be read as simply rejecting evidence not contemporaneous with the grant as not relevant in light of the fact that other contemporaneous evidence existed on the record in that case. *Higgins*, 255 Mich App at 102-103.[1]

Yet, even if *Higgins* did create such a rule, plaintiffs still would not prevail. This is because, six months after *Higgins* was decided, the Michigan Supreme Court implicitly rejected the rule of construction from *Thies* that *Higgins* relied upon. Mainly, in *Little v Kin*, 468 Mich 699, 700-701; 664 NW2d 749 (2003), the Supreme Court clarified the rules of construction

---

[1] Defendants distinguish *Higgins* on the basis that it involved a public dedication under the controlling plat act, 1887 PA 309, to a road end that terminated at a navigable body of water—not a private restrictive covenant granting access to a lakefront plot. The distinction is inconsequential because easements may be created by both public dedications and private ones and both are subject to the same rules of construction.

applicable in easement law. The Court noted that a circuit court, in construing the language of an easement for purposes of determining its scope,

> shall begin by examining the text of the easement. Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. See, e.g., *Gawrylak v Cowie*, 350 Mich 679, 683; 86 NW2d 809 (1957). *If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement.*[2]
>
> _____
>
> [2] We note that the Court of Appeals stated that "in deciding the scope of defendants' rights under the easement, the trial court must consider the language in the easement itself *and* the circumstances existing at the time of the grant . . . ." [*Little v Kin*,] 249 Mich App 502; 644 NW2d 375 [(2002), aff'd 468 Mich 699 (2003)] (emphasis added). *This directive is clearly inconsistent with the well-established principles of legal interpretation as stated above and is thus incorrect.* [*Little*, 468 Mich at 700 & n 2 (emphasis added).]

Accordingly, the predicate for plaintiffs' supposed contemporaneous-use rule—that only the circumstances existing at the time of the grant shall be considered—has been rejected by the Michigan Supreme Court and is not otherwise based on controlling law. Under *Little*, courts construing an ambiguous dedication can consider extrinsic evidence. Tellingly, the Supreme Court included no limiting language that would constrain consideration of extrinsic evidence to only evidence that is contemporaneous with the grant and, in fact, specifically rejected such limitation in a footnote. Instead, as with parol evidence in other contexts, and given *Little*'s broad pronouncement, the traditional requirement of relevancy applies to constrain its consideration. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003) ("Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule."); 29A Am Jur 2d, Evidence, § 1117, p 512 (parol evidence that is to aid in construction of an instrument must be relevant). It follows that, in considering extrinsic evidence when construing an ambiguous grant, that historical evidence not contemporaneous with the grant is not per se inadmissible; rather, a court, in considering such evidence, may disregard it if it determines that it is irrelevant.[2]

### B. SCOPE OF USE

Plaintiffs next argue that defendants' access to the lake is limited to mere access and does not include overnight mooring of boats or activities unrelated to the water. In support, plaintiffs generally liken this matter to cases in which backlot owners were granted easements "over and

_____

[2] We note that the unpublished caselaw plaintiffs rely on to support this supposed rule is not persuasive. Plaintiffs cite no binding authority that would require this Court to conclude that the circuit court erred by considering extrinsic evidence not contemporaneous with the restrictive covenant when construing an ambiguous restrictive covenant.

-9-

across" outlets to access a navigable body of water, which excluded overnight mooring of boats and activities unrelated to the water, such as sunbathing, picnicking, gathering, and lounging.

Plaintiffs miss, however, that this Court in *Kraus I* undertook an in-depth analysis of the instant restrictive covenant and rejected this "mere access" argument. In *Kraus I*, this Court instead ruled that the rights granted to defendants under the restrictive covenant are akin to the rights and obligations held by the riparian owners and *not* limited to mere access. See *Kraus I*, unpub op at 11-12. The question left to the circuit court on remand was the scope of riparian rights that defendants backlot owners possessed. *Id*. at 12. Accordingly, to agree with plaintiffs, i.e., to conclude that the restrictive covenant only allows access to the lake, would violate the law of the case doctrine. See *Duncan*, 300 Mich App at 188-189. While this Court's obligation to adhere to prior decisions of the appellate court in the same case may be suspended where there has been a material change in the facts or intervening change in the law, see *id*. at 189, plaintiffs have not highlighted any new material facts or a change in the law that would support their position. In fact, the new evidence proffered on remand does not support plaintiffs' position, but instead supports defendants' position. Accordingly, the law of the case doctrine precludes plaintiffs' claims.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan