*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WESTFALL HEIGHTS PROPERTY OWNERS
ASSOCIATION, INC.,

          Plaintiff/Counterdefendant-Appellant,

v

DEREK CARR, FREDERICK D. BERRY,
JOANNE BERRY, ROBERT A. JACOBY LIVING
TRUST, CAROLE L. JACOBY LIVING TRUST,
JACK E. NEWMAN, CAROL L. NEWMAN,
GEORGE SPARROW, RICKY REIST, JOY REIST,
JAMES & NORMA BAKER TRUST, KAREN
JAYE, JAMES M. ROOT, JM INVESTMENT
GROUP, LLC, JEFFREY A. KUCH, DAVID
PIONTKOWSKI, MELANIE PIONTKOWSKI,
LINDA E. FERO, BRIAN LACKEY, JOANNA
LACKEY, LENORE C. BARTH, NORMAN C.
BARTH, DAVID M. BARTH, FLOYD & JUANITA
WALLINGTON TRUST, ROBERT W. GOOD,
MARY A. GOOD, RONALD & MARY MEIRING
TRUST, RAYMOND C. SHOEBOTTOM, SHERYL
L. SHOEBOTTOM, HUBERT M. JONES,
FRANCES L. JONES, CLAYTON SHAFER,
DAELYNN TERRELL, KEVIN HARVEY, TORI
HARVEY, MARGARET P. EVANS, WILLIAM I.
SOLES, KELLY HOWARD, PATRICK HOWARD,
HOWARD A. DIEM, GLORIA J. DIEM,
JENNIFER WILSON, JERRY F. SPEER, MARK D.
BRADLEY, VICKI JO BRADLEY, SCOTT
DOWD, PAM HUNT, KELLIE NAPLES,
DOUGLAS L. RYCKMAN TRUST ET AL.,
WOODROW HOLBROOK, JANICE HOLBROOK,
ROBERT J. FERRALL, WILMA J. FERRALL,
GOOSSEN LIVING TRUST, SALLY BYGROVE,
DEBRA NORTON, DALE J. HOWARD,
MARILYN JO HOWARD, GLEN E. VERDOUX,

UNPUBLISHED
April 07, 2025
11:24 AM

No.   365165
Roscommon Circuit Court
LC No.   2017-723550-CH

CAROL A. VERDOUX, RONALD L. FLEMING, MARILYN K. FLEMING, MICHAEL J. MCDONOUGH, SHARON L. MCDONOUGH, ROBERT G. GEISLER, DEBORAH A. GEISLER, FREDERICK A. MONDRO, JOANNE M. MONDRO, JEFFREY L. WARREN, CHARLES B. LAPHAM, LINDA LEE MILLER, BARBARA A. FALLS, ANN M. MANDERNACH, DANIEL J. MANDERNACH, JR., RAYMOND A. LOWRY, ANN M. LOWRY, BRIAN MCKEEHAN, CHARLES L. HOLBROOK, JR., FULLMER LAND DEVELOPMENT, LLC, TERRENCE D. PARKER JOYCE E. PARKER, RICHARD CHAPMAN, CAROL CHAPMAN, EDDIE & CATHERINE BIELEC LIVING TRUST, CAROL A. BARKE, ROBERT D. BARKE, PAUL M. VANCE, DIANE L. VANCE, JOSEPH R. MORSE, DONNA M. MORSE, THOMAS V. MIKKO, ADAM A. PURDY, JENNIFER BAKER, JUSTIN REYNOLDS, KIRK OF UNITED PRESBYTERIAN, THEODORE T. TOWN, BARBARA E. BENSON, GREGORY J. YOST, AMY A. YOST, BONIFACIO HERBERT FAMILY TRUST, MICHELE A. FAETH REVOCABLE LIVING TRUST, ELIZABETH L. BUSCH, J. M. GOLDBERGER, LYNETTE E. GOLDBERGER, TERRY HOLT, ROBIN HOLT, DONALD L. LINTON, RUTH E. LINTON, LYNN DARRELL & LINDA GRUBER TRUST, ERNEST C. BEBOW, NANCY L. BEBOW, KELLY R. HEERLYN, THOMAS O. HEERLYN, TIMOTHY J. REILLY LIVING TRUST, ET AL., BRIAN D. MCNALLY LIVING TRUST, DWIGHT MCNALLY, DONALD R. ROHDE, MARLENE J. ROHDE, JOSEPH J. OSTACH, LORA L. OSTACH, WAYNE BRAUN, SANDRA BRAUN, MARYANN PAJOT, CHERYL ANN WERTH, MARTHA ANN POULOS, REBECCA ANN BOGGS, PATRICIA ANN WEBER, and NORTHVIEW CABINS, LLC,

Defendants-Appellees,

and

CRAIG BROWN, GLENDA BROWN, JAMES BROWN, DAVID CARROLL, BRENT COLLEY,

-2-

JOYCE DONALDSON, ANITA HANSON, LYNN HANSON, PHIL & MELLISSA HENDERSHOTT TRUST, MELISSA ISAACSON, ROBERT ISAACSON, SHEREE KORBOWNICK, THADDEUS KORBOWNICK, JOHN LUND, KATHLEEN LUND, KRISTINA MALENICH, TINA WIEGOLD, ADELE PURDY, VERN PURDY, DEBRA SCHUETTE, JEFFERY SCHUETTE, JOHN P. DUVENDECK, DAVID QUIMBY, PAMELA QUIMBY, WILLIAM F. BEVINS, DEBRA A. BEVINS, MARK S. GATLIN, ARTHUR E. PAYNE, HELEN K. PAYNE, LORI Q. CHES, ROBBIN R. COOPER, SHAINA SCHNEIDER, GILBERT J. NELSON, DOROTHY A. NELSON, ANDREW NICHTER, MICHELLE NICHTER, JAMES CANLER, PATRICIA CANLER, ROBERT JONES, DEBORAH JONES, DAVID W. CLARK, DONALD J. DENYS, JOYCE A. DENYS, KRISTA KRAUSE, KENDRA MURRAY, KARA JOHNSON, WISNIEWSKI FAMILY TRUST, THOMAS A. SOHN, PETER J. MARQUETTE, YVONNE J. ARNOLD, ANGELA BIRD, FREDERICK D. GETTLE, LAURA L. GETTLE, MILTON D. SPROUL, LOIS A. SPROUL, TIM AINSWORTH, MARY JO AINSWORTH, PHILLIP E. HENDERSHOTT ESTATE ET AL., CRAIG R. BROWN AND GLENDA S. BROWN FAMILY REVOCABLE LIVING TRUST ET AL., and MICHAEL DONALDSON,

        Defendants/Cross-Plaintiffs-
        Appellees,

and

RALPH A. CZOLGOSZ,

        Defendant/Counterplaintiff-Appellee,

and

MARLENE K. CZOLGOSZ,

        Defendant/Counterplaintiff,

-3-

and

KEVIN G. FULLER,

Defendant/Cross-Defendant,

and

ANN R. COLLISON, STEVE P. ANTICUAR, JR.,
GAIL ANTICUAR, DONALD WILL, PAMELA
WILL, MICHAEL DANKERT, ALISHA
DANKERT, LYNN T. BAESE TRUST, ROBERT &
SUSAN REHMANN REVOCABLE LIVING
FAMILY TRUST, LINDA DICKINSON, ELDEN
DICKINSON, KATHI LYNN GREENFIELD,
KEITH WILLIAM CRANDALL, ROY D.
BURESH, SANDRA L. BURESH, and SHARON
QUINN,

Defendants,

and

KAREN STAELGRAEVE, GEORGE
STAELGRAEVE, ERIC COOK, and ALICIA L.
COOK,

Counterdefendants.

Before:  BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Plaintiff Westfall Heights Property Owners Association, Inc., appeals by right the judgment of the trial court following a bench trial.  We affirm.

I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is a homeowner's association with a membership consisting primarily of riparian[1] property owners in the Westfall Heights subdivision on Houghton Lake.  The defendants in this

---

[1] Although land that abuts a lake, as opposed to a river, is more properly defined as "littoral," courts have used the term "riparian" to describe both types of land. *2000 Baum Family Trust v*

-4-

case consist of all the property owners in the subdivision.[2]  This appeal concerns the scope of the permissible use of two areas in the subdivision used for docking boats, Center Landing and East Landing.

The landings at issue have docks that extend into Houghton Lake.  The dedication of the plat of the Westfall Heights subdivision (the dedication) provides:

> KNOW ALL MEN BY THESE PRESENTS, That we, SIMON WESTFALL and BETSEY C. WESTFALL, husband and wife, as proprietors have caused the land embraced in the annexed plat to be surveyed, laid out and platted to be known as WESTFALL HEIGHTS . . . Denton Twp., Roscommon Co., Mich, and that all the streets, boulevards, drives and avenues as shown on said plat are hereby dedicated to the use of the public for roadway purposes and that the two landings as shown on said plat are hereby dedicated to the use of the owners or occupants of any or all of the lots included in this plat only.

The Center Landing dock was the subject of a lawsuit in 1999, in which this Court upheld the trial court's determination that the scope of the dedication allowed a dock at Center Landing. *Haag v Callard*, unpublished per curiam opinion of the Court of Appeals, issued February 15, 2002 (Docket No. 223658).  *Haag* involved a dispute about Center Landing between three plaintiffs and eight defendants.  In that case, the trial court found that the subdivision had been platted by Simon and Betsey Westfall, who resided in the subdivision after the plat.  The trial court noted that the dedication stated that "the two landings as shown on said plat are hereby dedicated to the use of the owners or occupants of any or all the lots included in this plat only."  Further, only 26 of the 184 lots had lake frontage, meaning that more than 85% of the subdivision's lots relied on Center Landing and East Landing to access the lake.

In pertinent part, the defendants in *Haag* had asked the trial court to enjoin the plaintiffs from using Center Landing for anything more than access to the water.  The trial court opined that the case would be "decided by determining the scope of the dedication of the plattors."  The trial court noted that the plattors had referred to the access locations as "landings" instead of streets, alleys, or any other type of passageway.  The trial court considered the Black's Law Dictionary definition of "landing," which indicated that a landing included the rights to launch watercraft, moor boats, maintain a dock, and engage in water-related activities.  However, the trial court also considered the historical use of the landing and described the history of docks and wet-mooring of boats that existed at Center Landing, stating:

> There was extensive trial testimony that Mr. Simon Westfall lived in the Subdivision after the plat was created through the remainder of the 1940's and at

---

*Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010).  We will use the term "riparian" to remain consistent with the lower court's decision and the parties' arguments on appeal.

[2] Unless otherwise indicated, however, our references to "defendants" in this opinion refer to only those defendants who argued that the scope of the subdivision's dedication indicated that the grantors intended to allow a dock to be present at each landing at issue.

-5-

least into the 1950's. During at least part of this time, boats were moored out from Center Landing, a dock was installed, there was swimming, sunbathing and picnicking (without picnic tables) on and near the end of Center Landing. Mr. Westfall encouraged these activities.

The trial court in *Haag* found that the defendants' use of Center Landing was within the scope of the plat's dedication. It held that permitted uses included "the placement of a dock that is accessible to all owners and occupants of lots in the subdivision, seasonal mooring of boats, sunbathing, picnicking (without picnic tables or structures) and swimming." Additionally, the trial court determined that parking while the lot owners or occupants were actually using the lake for permitted uses was within the scope of the dedication, as long as the vehicles did not block access to the lake, and that the plaintiffs could use the landing to access their lots. The trial court further required that

the dock must be located and the boats moored in configurations so that the Lake is always accessible to another lot owner or occupant who comes along to launch or remove a vessel.

Additionally, the permitted uses of the landing were not allowed to unreasonably interfere with the plaintiffs' use and enjoyment of their property.

On appeal, this Court characterized the three plaintiffs as the owners of two riparian lots and the eight defendants as nonriparian owners who used the landing to access Houghton Lake. *Haag*, unpub op at 1. In pertinent part, this Court stated that, "[i]n determining the scope of permissible use by nonriparian owners, the intent of the plattors should be determined with reference to the language used *in connection with the facts and circumstances existing at the time of the grant*." *Id*. at 2. (emphasis added). We further stated that "[t]he extent of the nonriparian owners' dedicated use also may be determined according to the traditional and historical use of the easement area." *Id*.

This Court further agreed with the trial court that it was important that the grantors had used the word "landing" in their dedication. *Id*. The parties had not presented evidence of the facts or circumstances at the time the grantors had dedicated the landing. *Id*. However, testimony suggested that one grantor continued to live in the subdivision and did not object to the dock or the offshore mooring of boats. *Id*. at 3. This Court opined that "[t]his evidence raised the reasonable inference that the grantor would have made it known if the subdivision residents were behaving in a manner inconsistent with his intent at the time of dedication." *Id*. When considered in conjunction with the fact that the grantors had chosen to use the word "landing," this Court determined that it was not clearly erroneous for the trial court to have determined that the grantors intended the dedication to include the right to erect a dock and seasonally moor boats. *Id*.

In the present case, the parties stipulated that there now are a total of 123 owners in the Westfall Heights subdivision, with 97 backlot owners. There are both residential and commercial owners. Plaintiff's association consists of 22 members, only two of whom do not have lakefront property. During the course of the lawsuit, the trial court ordered all property owners in Westfall

Heights to be joined as defendants. The defendant members of plaintiff's association were later dismissed by stipulation.[3]

Plaintiff's amended complaint sought a declaration concerning the scope of the dedication of the landings, with plaintiff requesting in pertinent part that the trial court define the scope of the dedication to include only the discharging or taking on of passengers or cargo. Plaintiff also alleged two claims of nuisance per se, with one claim based on defendants' alleged failure to maintain a marina-operating permit under the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*., and the other based on defendants' alleged violation of the Denton Township zoning ordinance. As relief, plaintiff requested that the trial court determine the scope of the dedication and limit it to the discharging and taking on of passengers and cargo, permanently enjoin defendants from conducting a nuisance per se or, in the alternative, strictly enforce the prior judgment in *Haag*, hold some defendants in contempt of court, and eject defendants who were trespassing on private riparian areas.

Prior to trial, the trial court ruled that plaintiff was collaterally estopped from asserting that the term "landing," as applied to Center Landing, was different than the term as defined by the *Haag* courts, holding that, although the prior case did not concern the same parties as the current case, the parties shared identical interests in the scope of the dedication as the parties had in *Haag*. Therefore, the current parties were privies under the "substantial identity of interests" rules, and collateral estoppel could apply. The trial court also rejected plaintiff's argument that there had been an intervening change in the law between the time of the *Haag* decision and the present. The previous court had relied on *Dobie v Morrison*, 227 Mich App 536, 540; 575 NW2d 817 (1998). *Haag*, unpub op at 2. Although the trial court in this case struggled with the distinction between *Dobie*, 227 Mich App at 541 (allowing use of extrinsic evidence in interpretation), *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 94; 662 NW2d 387 (2003) (not allowing the use of extrinsic evidence in interpretation), it ultimately opined that *Dobie* had not been overturned.

Following several days of trial testimony, the trial court issued a written opinion. The trial court extensively summarized the procedural and factual history of the case and the testimonies of an employee of the Department of Environment, Great Lakes, and Energy (EGLE), a Detective from the Michigan Department of Natural Resources Law Enforcement Division's Environmental Investigation Section, and the Denton Township zoning administrator. The trial court found that changing dock configurations had made it harder for riparian owners to enter and leave their docks and that wet-anchoring of boats in the lake compounded the problem of congestion. The trial court also found that the property owners mooring boats at East Landing had started an association that collected annual fees for dock mooring; despite the fact that there was no formal association at Center Landing, the trial court noted that a property owner was required to purchase sections of the communal dock in order to moor a boat there. It determined that "[t]he fee arrangement is managed and controlled by others that already moor their boats at the landing dock." The trial court further found that, because of the number of boats moored at the landings, owners and

---

[3] Numerous other defendants have also been dismissed, declined to participate, or reached consent judgments.

occupants in the subdivision were unable to swim and recreate in the 50-foot-wide landing. Often, those people moved beyond the docks and used the water in front of the riparian owners' property.

The trial court held that the scope of the dedication for Center Landing had already been determined in *Haag* and that the previous courts' rulings were binding on that issue. Moreover, although that decision had concerned only Center Landing, the trial court opined that the same definition should be applied to East Landing because nothing in the language of the dedication indicated that the grantors intended different scopes of use for the different landings.

Relevant to the arguments in this appeal, the trial court determined that the landing docks provided seasonal mooring of boats, including the loading and unloading of boats, and concluded that docks provided a "service" under the NREPA. The trial court noted that MCL 324.30101(j) defined a "marina" as a facility that "offers service to the public or members of the marina," and concluded that the fact that participants were required to pay a fee or pay into a fund to use the docks qualified the docks (as they were currently used) as a marina. In simpler terms, the trial court found that the docks were being operated as marinas because a fee was charged to use them. Additionally, the trial court found that the use of docks at both landings "currently affects riparian rights and unreasonably interferes with navigation and the correlated rights of adjacent riparian owners." Therefore, a permit would be required for the docks to continue operating in the current manner. The trial court further noted that a permit might be required under the NREPA, even if a structure is not deemed a marina, if that structure interfered with other legal uses of the water. The trial court found that the current use of the docks at the landings were not contained solely within the landings' riparian owners' interests, and therefore violated the NREPA by unreasonably interfering with the riparian rights of others.

After considering the township zoning ordinance and the testimony of the witnesses, the trial court held that both landings were to be limited to the mooring of no more than ten watercraft within the landings' riparian areas of interest, with no more than five watercraft seasonably moored at the docks and no more than five watercraft wet-anchored beyond the docks. The trial court held that this limitation on mooring would bring the landings into compliance with the township's zoning ordinance, would be consistent with the NREPA, and would not result in an unreasonable interference with the adjacent riparian uses. Accordingly, this level of use would not require a permit under the NREPA because the owners had the right to put out a dock and moor boats, the docks were being used for private, noncommercial, recreational use, and their use would not result in an unreasonable interference with the adjacent riparian uses.

This appeal followed.

## II. COLLATERAL ESTOPPEL[4]

Plaintiff argues that the trial court incorrectly applied the law of collateral estoppel because the parties to this case are not the same as the parties to the previous case, and therefore, the

---

[4] Plaintiff frames its arguments on appeal as concerning res judicata rather than collateral estoppel. Although aspects of these doctrines overlap, these are separate doctrines. See *Mecosta Co Med*

doctrine does not apply. Plaintiff also argues that there has been an intervening change in the law since the *Haag* decision regarding whether a court may consider historical use when determining the scope of a dedication. We disagree with both arguments.

This Court reviews de novo the application of the doctrines of res judicata or collateral estoppel. *King v Munro*, 329 Mich App 594, 598; 944 NW2d 198 (2019). We review de novo questions of law. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019); *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

"Collateral estoppel is a rule of issue preclusion." *Moses v Dep't of Corrections*, 274 Mich App 481, 503; 736 NW2d 269 (2007). The elements of collateral estoppel are:

> (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the parties or privies must have had a full [and fair] opportunity to litigate the issue, and (3) there must be mutuality of estoppel. [*Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 283; 983 NW2d 401 (2022) (quotation marks and citation omitted; alteration in original.]

## A. SAME PARTIES OR PRIVIES

Plaintiff argues that the trial court should not have applied the doctrine of collateral estoppel because the same parties involved in this suit were not involved in the previous suit. We disagree, and conclude that the trial court did not err when it determined that the parties were privies for the purposes of collateral estoppel because the parties' interests in the previous case were so identified with the parties' interests in this case that they represented the same legal rights.

When applying the doctrine of collateral estoppel, a critical factor is "the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered." *Mecosta Co Med Ctr*, 509 Mich at 283. "In its broadest sense, privity has been defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Id*. at 283-284. "Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts." *Id*. at 284 (quotation marks and citation omitted). Rather, "[p]rivity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-

---

*Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282-283; 983 NW2d 401 (2022); *Synergy Spine & Orthopedic Surgery Ctr, LLC v State Farm Mut Auto Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364359); slip op p 4. "Whereas res judicata involves preclusion of entire claims, collateral estoppel focuses on specific issues within an action." *Mecosta Co Med Ctr*, 509 Mich at 282-283. Because the issue concerns only whether the prior case's definition of the term "landing" should be applied in this subsequent case, collateral estoppel is the applicable doctrine.

party are presented and protected by the party in the litigation." *Phinisee v Rogers*, 229 Mich App 547, 553-554; 582 NW2d 852 (1998).

There is no dispute that the parties to this case are not the same as the parties to the previous case. However, the parties are in privity because the interests of the parties in this case are so identified as to represent the same legal right. See *Mecosta Co Med Ctr*, 509 Mich at 284. The subdivision's plat provides that "the two landings as shown on said plat are hereby dedicated to the use of the owners or occupants of any or all of the lots included in this plat only." Every property owner within the Westfall Heights subdivision would have their rights affected in the same way by the interpretation of the plat language at issue. The parties merely advance different positions about the meaning of a term from which all of their mutual property rights devolve.

Additionally, there is no indication that the riparian and nonriparian owners in this case are attempting to represent different legal interests than those of the riparian and nonriparian owners in *Haag*. In *Haag* , the riparian owners had sought to restrict the nonriparian owners' use of Center Landing to only accessing the water. In this case, plaintiff seeks to restrict the nonriparian owners' use of Center Landing to only discharging and taking on passengers and cargo. The prior plaintiffs were riparian owners. In this case, plaintiff's membership consists primarily of riparian owners; only two members of plaintiff do not have lakefront property. The vast majority of defendants are nonriparian owners. Notably, all but one of the defendants dismissed from the case by consent judgment were members of plaintiff. Both riparian and nonriparian owner interests were represented in the prior proceeding concerning the meaning of the word "landing" as it applied to all property owners, and this case again involves a dispute between riparian and nonriparian owners regarding the meaning of that term.

We agree with the trial court that the parties to the respective cases share a substantial identity of interests sufficient to be privies. This case does not merely concern an overlapping legal question. Instead, it involves parties whose rights devolve from the same property interest asserting the same legal rights as the parties in the prior proceeding.

## B. INTERVENING CHANGE IN LAW

Plaintiff also argues that the trial court erred by determining that collateral estoppel barred relitigating the meaning of the word "landing" because there has been an intervening change in the law that affects how the word should be interpreted. Plaintiff specifically contend that changes in the law since *Haag* indicate that a dedication should not be interpreted in connection with the facts existing at the time of the grant. We disagree.

Res judicata[5] does not bar a subsequent action "when there has been an intervening change of law that alters the legal principles on which the court will resolve the subsequent case." *In re Bibi Guardianship*, 315 Mich App 323, 334; 890 NW2d 387 (2016) (quotation marks and citation omitted). "When interpreting deeds and plats, Michigan courts seek to effectuate the intent of those who created them." *Tomecek v Bavas*, 482 Mich 484, 490-491; 759 NW2d 178 (2008). A

---

[5] See n 4.

plat need not use any specific words to create an easement. *Id.* If the original grantors use the same labels for easements, they intend that the same use applies to them. *Id.*

"If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). However, if the language of a deed is plain and unambiguous, "no further inquiry is permitted." *Id.*, citing *Gawrylak v Cowie*, 350 Mich 679, 683; 86 NW2d 809 (1957) (stating that "[t]his Court has recognized in prior decisions that a deed of conveyance, if not ambiguous in its terms, must be construed as written."). The *Little* Court noted that

> the Court of Appeals stated that "in deciding the scope of [the] defendants' rights under the easement, the trial court must consider the language in the easement itself *and* the circumstances existing at the time of the grant . . . ." . . . This directive is clearly inconsistent with the well-established principles of legal interpretation as stated above and is thus incorrect. [*Little*, 468 Mich at 700 n 2.]

Therefore, it has been inappropriate, since at least 1957, for a court to consider extrinsic evidence to determine the scope of an easement's dedication unless the dedication is ambiguous. There has been no intervening change in law between the 2002 *Haag* decision and the present.

Plaintiff argues that the law has changed because the trial court and this Court in *Haag* relied on *Dobie*, 227 Mich App at 541, which plaintiff asserts was overruled by *Higgins Lake*, 255 Mich App at 94. But the Court in *Higgins Lake* did not change the law; it applied the law consistently with the well-established principles noted by the Michigan Supreme Court in *Little*. It is clear from caselaw that it is not appropriate for the trial court or this Court to consider the circumstances existing at the time of the grant unless the dedication is ambiguous. The law has not changed.[6]

Even so, we do agree with plaintiff that the law-of-the-case doctrine is inapplicable. The law-of-the-case doctrine provides that if this Court has ruled on a particular issue, we will not decide that issue differently during a subsequent appeal in the same case. *Lenawee Co v Wagley*, 301 Mich App 134, 149 836 NW2d 193 (2013). *Haag* and this case do not involve a single, continuing suit. Nevertheless, because the trial court correctly applied the doctrine of collateral estoppel to reach the same result, its later references to the law-of-the-case doctrine were harmless because they did not affect the outcome of the lower court's decision. See *Ellison v Dep't of State*,

---

[6] Plaintiff additionally asserts that the *Haag* courts incorrectly *applied* the law to the extent that extrinsic evidence was considered to determine the plattors' intent without a determination that the language the plattors used was ambiguous. This assertion is a collateral attack on *Haag*, and we decline to address it in this appeal. See *Roman Cleanser Co v Murphy*, 386 Mich 698, 703-704; 194 NW2d 704 (1972).

320 Mich App 169, 179; 906 NW2d 221 (2017). Any error is particularly harmless when the trial court indicated that it would have applied the same definition regardless.[7]

The trial court did not err by holding that plaintiff was collaterally estopped from litigating the definition of the word "landing" in this case. *King v Munro*, 329 Mich App at 598.

## III. NREPA VIOLATION

Plaintiff also argues that an EGLE employee's determination that the landings' docks required a permit precluded the trial court from concluding otherwise. We disagree. This Court reviews de novo questions involving the interpretation and application of statutes. *Linden v Citizens Ins Co of America*, 308 Mich App 89, 91; 862 NW2d 438 (2014). We review de novo a trial court's equitable decision, but review for clear error any findings of fact supporting those decisions. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 270; 761 NW2d 761 (2008). A finding of fact is clearly erroneous if, giving deference to the trial court's credibility determinations, no substantial evidence supports the finding or this Court has a definite and firm conviction that the lower court made a mistake. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014).

"All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 333; 999 NW2d 423 (2023). The language of the statute itself is the primary indication of the Legislature's intent. *McQueer*, 502 Mich at 286. This Court reads the statute as a whole while "reading individual words and phrases in the context of the entire legislative scheme." *Sunrise Resort Ass'n*, 511 Mich at 334 (quotation marks and citation omitted).

Plaintiff argues that the trial court erred by failing to adopt the testifying EGLE employee's determinations regarding whether the docks at the landings violated the NREPA. We disagree. "[A]gency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008). Respectful consideration is not the equivalent of deference, *id*. at 108, but rather indicates that the agency's decision may be helpful when construing a provision with a doubtful or obscure meaning. See *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 363; 891 NW2d 884 (2016). The trial court was not required to give the EGLE employee's opinion deference when interpreting the NREPA.

Plaintiff also argues that the trial court rendered inconsistent rulings regarding whether the docks were marinas that required permits. But a careful review of the trial court's decision

---

[7] We note that the *Haag* courts principally relied on definitions of the word "landing" to determine that a landing included the right to launch watercraft, maintain boats, and engage in water-related activities; they did not base their interpretations solely or even primarily on the historic use of the landings.

-12-

establishes that its rulings were not inconsistent. Rather, the trial court found that the docks at the landings *had* been operating as unpermitted marinas under the NREPA because fees were being charged to use the docks (not, as plaintiff contends, because the docks were providing services), and the trial court tailored its relief so that, in the future, the landings would not require permits because they would merely be seasonal structures placed on the bottomlands to facilitate private use and would not unreasonably interfere with the use of water by others.

Michigan's nuisance law supports the trial court's holdings. There are two varieties of nuisance recognized in Michigan: public nuisance and private nuisance. *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id*. "[T]he gist of a private nuisance action is an interference with the occupation or use of land or an interference with servitudes relating to land." *Id*. at 303. The elements of a claim of private nuisance are "that (1) defendants interfered with the use or enjoyment of plaintiff's property rights and privileges; (2) defendants' invasion of the property interests caused plaintiff significant harm; and (3) the invasion was intentional and unreasonable or was otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct." *Cleveland v Hath*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363321); slip op p 7. See *Adkins*, 440 Mich at 304. "Where a private nuisance affects water, a riparian land owner may commence an action for its abatement." *White Lake Improvement Ass'n v Whitehall*, 22 Mich App 262, 272; 177 NW2d 473 (1970).[8]

"A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Ypsilanti Charter Twp*, 281 Mich App at 269 n 4, quoting *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959) (quotation marks omitted). "Whether an allegedly injurious condition constitutes a nuisance per se is a question of law." *Ypsilanti Charter Twp*, 281 Mich App at 269.

The NREPA defines "marina" as "a facility that is owned or operated by a person, extends into or over an inland lake or stream, and *offers service to* the public or *members of the marina* for docking, loading, or other servicing of recreational watercraft." MCL 324.30101(j) (emphasis added). A " 'seasonal structure' includes any type of dock, boat hoist, ramp, raft, or other recreational structure that is placed into an inland lake or stream and removed at the end of the boating season." MCL 324.30101(t). The NREPA provides in pertinent part that, "[e]xcept as provided in this part, a person without a permit from the department shall not . . . [c]onstruct, reconfigure, or expand a marina." MCL 324.30102(1)(c). MCL 324.30106a governs the permitting of a marina. However, "[a] permit is not required under this part for . . . [a] seasonal structure placed on bottomland to facilitate private noncommercial recreational use of the water if

---

[8] Although uncontradicted opinions issued before November 1, 1990, are not binding, they should be considered as precedent and receive greater deference than unpublished cases. *Davis v Wayne Co Election Comm'n*, ___ Mich App ___ n 11; ___ NW3d ___ (2023) (Docket No. 368615); slip op p 12 n 11.

it does not unreasonably interfere with the use of the water by others entitled to use the water or interfere with water flow." MCL 324.30103(1)(b).

The trial court's ruling regarding the application of the NREPA was complex, but it did not lose sight of the fact that the end goal of its examination was to determine whether the activity at the landings constituted a nuisance and, if so, what should be done about it. The trial court held that the parties had not contested that the landing docks were seasonal structures on bottomlands to facilitate private noncommercial recreational use of the water; accordingly, even if held to be a marina under the NREPA, a permit would only be required if the presence or use of the structures unreasonably interfered with the flow of water or the water by others entitled to do so. The trial court further found that the landing docks provided seasonal mooring of boats, including the loading and unloading of boats, and that this use of the docks was a "service" under the NREPA. However, a facility offering such a service is only a marina if the service is offered to members of the public or members of the marina. MCL 324.30101(j). Westfall Heights is a private subdivision and the landings are not open to members of the public. In this case, the trial court emphasized that property owners were required to pay a fee or pay into a fund to use the docks. The trial court determined that, based on those facts, the landings' docks qualified as a "marina." In other words, the trial court did not conclude that the docks were marinas solely because they provided a service; it concluded that the docks functioned as marinas because the docks offered a service to members who paid for the privilege.

The trial court then found that the uses occurring at the landings' docks violated the NREPA because they were an overuse of the landing area and an unreasonable interference with the rights of the adjacent riparian owners. The use of the docks resulted in boats being operated outside the confines of the landing area. The trial court specifically found that, "based upon the testimony of [the EGLE employee] and the formula used in MCL 324.30106a(2), *the use of the landing docks as it exists right now violates MCL 324.30103—thus, a permit is required for both docks*." (Emphasis added.) The trial court determined that, "[i]n light of the above, the court finds that *the use of the landings presently* constitutes an overburdening of the landing area in correlation with the adjacent riparian owner's interests." (Emphasis added.)

After determining that the docks at the landings constituted a nuisance, the trial court was then permitted to fashion an appropriate remedy. "The difference between a nuisance *per se* and one in fact is not in the remedy but only in the proof of it." *Ypsilanti Charter Twp*, 281 Mich App at 269-270. Nuisance-abatement proceedings are equitable in nature. See *id*. at 270 (concerning public nuisances). A court sitting in equity "molds its relief according to the character of the case[.]" *Allard v Allard (On Remand)*, 318 Mich App 583, 596; 899 NW2d 420 (2017). (Quotation marks and citation omitted).

In this case, the trial court specifically tailored its relief with the intent to bring the docks into compliance with the NREPA moving forward:

> [T]he court finds that **both** center and east landing shall be limited to having no more than ten (10) watercraft moored within the landings' riparian area of interest; no more than five (5) watercraft can be seasonally moored at the landing docks (with or without hoists) and no more than five (5) watercraft can be seasonally wet anchored out beyond the landing docks. Watercraft wet anchored must be

-14-

configured so that the mooring under any wind condition will occur solely within the landing area. This limitation on boat mooring will bring the landings into compliance with the township ordinance (despite the township not enforcing the ordinance) and is consistent with Part 301 of the Act. In the court's view, limiting the seasonal mooring at the landings to no more than ten boats will not result in an unreasonable interference with the correlated adjacent riparian uses and as such, does not violate MCL 324.30103 which would otherwise require a permit for such use. The court also finds that MCL 324.30101, 324.30106, and 324.30106a will not be violated with this limitation of use in place at the landings because this limited use is intended to be consistent with the correlative rights of other riparian owners in the area and it is consistent with the property right to put out a dock and moor boats as ordered in the *Haag* case. Thus, the two landing docks do not require a permit under these specific sections of the Act. Finally, the court finds that *the landings are being used for a private noncommercial recreational use of the water based upon a private property right conveyed to the owners and occupants of the plat as previously ordered in Haag*. [Bold in original.]

The trial court correctly held that, as long as defendants are not offering services to members of the public or members of the marina, their activity does not fall within MCL 324.30101(j). And, provided that defendants' placement and use of docks remains private, noncommercial, recreational, and does not unreasonably interfere with the use of water by others, MCL 324.30101(1)(b) provides that those docks do not require a permit. The trial court agreed with plaintiff that the docks were being operated in a way that was interfering with others' riparian interests inconsistent with the NREPA. It then tailored its relief so that the docks would not be operating as a marina in the future and would, in theory, operate in a way that would not require a permit. Its rulings were not inconsistent.

Plaintiff also argues that the trial court improperly held that the parties had not contested the fact that the landings are private and noncommercial. We disagree. Before the trial court, plaintiff did not argue that any of the activity at the landings was commercial; plaintiff argued only that the operation of the docks constituted the operation of a marina, and it supported that argument with the use of fees. All discussion of the dock fees before the trial court was in the context of whether fees were necessary to establish that the docks were operating as marinas. The trial court did not err when it held that neither party had argued that the docks were used for commercial purposes.

Affirmed.[9]

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Michelle M. Rick

---

[9] We decline the request of defendants Ralph and Marlene Czolgosz to speculate on whether our opinion may affect the validity of their consent judgment. "A party may not premise an action on a hypothetical controversy." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 553; 904 NW2d 192 (2017). Because no party has challenged the validity of that consent judgment, this issue is not ripe for review.